# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

### CASE NO. 15-21124-CIV- GOODMAN

### [CONSENT CASE]

MARLA MARTINS, et al.,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,

      Defendant.

_____/

## ORDER ON DEFENDANT'S MOTION TO DISMISS

This matter arises from the death of Briana Martins ("Briana"), a seventeen-year old resident of New Jersey, aboard the vessel *Explorer of the Seas*, operated by Defendant Royal Caribbean Cruises, Ltd. ("Defendant" or "RCCL"), in August of 2013. [ECF No. 1]. Plaintiffs[1] allege that Briana's death was caused by the ingestion of bacteria-ridden food aboard the *Explorer of the Seas*, that the shipboard medical staff negligently treated Briana's illness, and that, individually, Marla, Costa, G.E. and Tatiana suffered extreme emotional distress because of RCCL's negligence. [*Id.*].

In a motion, RCCL seeks to dismiss Plaintiffs' complaint, or, in the alternative, to strike impermissible claims for damages and Plaintiffs' individual claims. [ECF No. 7].

---

[1]      Marla Martins (Briana's mother), individually ("Marla") and as *administrator ad prosequendum* ("Administrator") for the Estate of Briana, decedent; Marcelo Costa ("Costa"); G.E., a minor, by and through her grandmother, legal and natural guardian, and next friend, Marla Martins; and Tatiana Martins ("Tatiana") (collectively, "Plaintiffs").

Having reviewed the complaint, the motion, the response, the reply and the pertinent portions of the record, for the reasons outlined below, the Undersigned **denies in large part** and **grants in small part** Defendant's motion to dismiss.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>Procedural History</u>

Plaintiffs filed a seven-count complaint alleging: wrongful death under the Death on the High Seas Act ("DOHSA") (Count I); alternative wrongful death under DOHSA based upon apparent agency (Count II); negligent hiring, retention and training (Count III); and negligent infliction of emotional distress ("NIED") for Marla, Costa, G.E. and Tatiana (Counts IV-VII). [ECF No. 1]. RCCL filed a motion to dismiss Plaintiffs' complaint, or, in the alternative, to strike impermissible claims for damages and Plaintiffs' individual claims. [ECF No. 7]. Plaintiffs responded in opposition. [ECF No. 8]. Defendant filed a reply in support of the motion. [ECF No. 10].

Specifically, RCCL's motion seeks to dismiss or strike certain pleadings on five separate grounds. First, Defendant moves to dismiss Counts IV through VII with prejudice, arguing that DOHSA preempts claims for NIED, or, alternatively, that Plaintiffs have not alleged sufficient facts to support NIED claims. [ECF No. 7, pp. 3-9]. Second, Defendant contends that Plaintiffs have not alleged sufficient facts to support their claim for negligent hiring, retention and training. [*Id.,* at pp. 9-11]. Third, RCCL argues that Plaintiffs' complaint violates Federal Rule of Civil Procedure 8 by

improperly incorporating by reference all previously-stated facts for each count, thereby creating an impermissible "shotgun" pleading. [*Id.*, at pp. 11-13]. Fourth, Defendant contends that Plaintiffs' claims for damages under Florida and Bahamian law should be stricken. [*Id.*, at pp. 13-16]. And finally, RCCL argues that Plaintiffs' individual claims should be stricken. [*Id.*, at pp. 16-17].

**B.   Facts[2]**

Plaintiffs and Briana boarded the *Explorer of the Seas* on August 22, 2013 as paying passengers for a cruise vacation scheduled to return on August 31, 2013. [ECF No. 1, p. 3]. From the time they boarded the ship, Briana and Plaintiffs all consumed only food prepared and provided by Defendant. [*Id.*]. Between August 24, 2013 and August 26, 2013, Briana ingested bacteria-ridden food prepared by Defendant aboard the *Explorer of the Seas*. [*Id.*, at p. 4].

Briana first reported to the shipboard medical facility on the evening of August 27, 2013, complaining of vomiting, abdominal cramps and diarrhea, which began early that morning. [*Id.*]. Briana advised the shipboard medical staff that she had bariatric surgery approximately a year before. [*Id.*]. The shipboard medical staff administered Metoclopramide and Dicyclomine and sent Briana back to her room with Metoclopramide and Imodium capsules. [*Id.*]. Hours later, this time with Briana in a

---

[2]     The "facts" are those alleged in the Complaint.  The Undersigned accepts them as true for purposes of evaluating RCCL's dismissal motion. Thus, the Undersigned does not believe it is necessary to include the term "alleged" with each fact, as the context is clear -- the facts are merely allegations.

wheelchair, Marla and Briana returned to the shipboard medical facility and advised that Briana continued to suffer from her previous symptoms and now was also hyperventilating, had pain in her shoulders and chest and a burning sensation in her abdomen. [*Id.*, at pp. 4-5]. Shipboard medical staff conducted a complete blood count ("CBC") test and determined that Briana's results were normal, so they advised her to take the previously-provided medications and return to her cabin.

At approximately 9:30 AM, while the ship was at port in Labadee, Haiti,[3] Marla, Costa and G.E. returned to their cabin from breakfast and found Briana vomiting in the shower. [*Id.*, at p. 6]. Briana collapsed on the shower floor in front of Marla. [*Id.*]. Costa, G.E. and Tatiana also entered the bathroom and witnessed Briana collapsed on the floor with Marla while still vomiting. [*Id.*]. Costa attempted to help Briana sit upright, while Tatiana stroked Briana's hair. [*Id.*]. The shipboard nurse responded to an emergency call from the cabin and confirmed that Briana had no pulse, was not breathing and still had vomit in her mouth. [*Id.*]. Additional medical staff were called. [*Id.*]. Resuscitation efforts by additional shipboard medical staff were unsuccessful and Briana was pronounced dead at the scene. [*Id.*, at p. 7]. Briana died of peritonitis due to small bowel anastomotic perforation. [*Id.*].

---

[3]      Plaintiffs believe that the ship was docked in Labadee, Haiti hours before passengers were officially allowed to disembark to the port at 9:00 AM. Thus, part of Plaintiffs' claim is that Defendant, if the shipboard staff had identified the seriousness of Briana's illness, could have appropriately monitored Briana on the ship (by administering intravenous fluids and antibiotics) and then medically evacuated her to the port in Haiti for medical care and treatment. [ECF No. 1, pp. 5-6].

Additionally, Plaintiffs contend that the shipboard medical staff were acting as employees or actual agents of Defendant in various ways. [*Id.*, at pp. 7-9].

## II.   LEGAL PRINCIPLES

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must take all well-pleaded facts in the plaintiff's complaint and all reasonable inferences drawn from those facts as true. *Jackson v. Okaloosa Cnty., Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994). "A pleading must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). While detailed factual allegations are not always necessary in order to prevent dismissal of a complaint, the allegations must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A complaint must provide "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly,* 550 U.S. at 555. *See also Iqbal,* 556 U.S. at 678 (explaining that the Rule 8(a)(2) pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). Nor can a complaint rest on "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557 (alteration in original)).

The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570) (emphasis added); *see also Am. Dental Assoc. v. Cigna Corp.*, 605 F.3d 1283, 1288–90 (11th Cir. 2010). "[C]onclusory allegations, unwarranted deductions of fact, or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002).

Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Moreover, when the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not show[n]—that the pleader is entitled to relief." *Id.* (internal quotations omitted).

Because all facts set forth in the plaintiff's complaint are to be accepted as true, the court limits its consideration on a dismissal motion "to the pleadings and exhibits attached thereto." *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).

While the court is required to accept as true all allegations contained in the complaint, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678. "Dismissal pursuant

to Rule 12(b)(6) is not appropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Magluta v. Samples*, 375 F.3d 1269, 1273 (11th Cir. 2004) (quoting *Conley*, 355 U.S. at 45–46). Although, as noted, a court must accept as true a plaintiff's allegations, a court may dismiss a complaint on a dispositive issue of law. *Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist.*, 992 F.2d 1171, 1174 (11th Cir. 1993).

## III.   ANALYSIS

### A.   <u>Counts IV through VII should not be dismissed with prejudice.</u>

#### 1.   *DOHSA does not preempt the NIED claims.*

Defendant argues that DOHSA preempts any cause of action that arises out of or relates to a death on the high seas. DOHSA provides:

> When the death of an individual is caused by wrongful act, neglect, or default occurring on the high seas beyond 3 nautical miles from the shore of the United States, the personal representative of the decedent may bring a civil action in admiralty against the person or vessel responsible. The action shall be for the exclusive benefit of the decedent's spouse, parent, child, or dependent relative.

46 U.S.C. § 30302.

DOHSA limits recovery to "a fair compensation for the pecuniary loss sustained by the individuals for whose benefit the action is brought." 46 U.S.C. § 30303; *see Dooley v. Korean Air Lines Co.*, 524 U.S. 116, 122 (1998). "DOHSA does not authorize recovery for the decedent's own losses, nor does it allow damages for nonpecuniary losses." *Dooley*, 524 U.S. at 122.

7

In *Mobil Oil Corp. v. Higginbotham*, the Supreme Court stated that when DOHSA speaks directly to an issue, "courts are not free to 'supplement' Congress' answer." 436 U.S. 618, 625 (1978). The Court explained that "Congress did not limit DOHSA beneficiaries to recovery of their pecuniary losses in order to encourage the creation of nonpecuniary supplements. There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted." *Id.* (internal citations omitted). However, "[b]ecause *Higginbotham* involved only the scope of the remedies available in a wrongful-death action, it did not address the availability of other causes of action." *Dooley*, 524 U.S. at 117.

The parties' and the Court's research reveals just four instances -- all trial court-level decisions -- where courts have addressed whether a separate claim for emotional distress may be pursued concomitantly with a DOHSA wrongful death claim. Two courts found those claims precluded, while two found that such claims could be pursued (however, they differed about the context of allowable claims, as explained below). None of these four cases are binding.[4]

In *Rux v. Republic of Sudan*, 495 F. Supp. 2d 541, 545-47 (E.D. Va. 2007), the plaintiffs were family members of the seventeen sailors who died in the October 2000

---

[4]     The Undersigned is bound only by decisions of the United States Supreme Court and the Eleventh Circuit Court of Appeals. The decision of a federal district judge is not binding precedent in a different judicial district, the same judicial district -- or even upon the same judge in a different case. *Camreta v. Greene*, 131 S. Ct. 2020, 2033 n. 7 (2011); *Dow Jones & Co., Inc. v. Kaye*, 256 F.3d 1251, 1258 n. 10 (11th Cir. 2001); *Fishman & Tobin, Inc. v. Tropical Shipping & Constr. Co., Ltd.*, 240 F.3d 956, 965 n. 14 (11th Cir. 2001).

attack on the U.S.S. Cole. Among other claims, the plaintiffs sought damages for "emotional distress experienced upon learning of the attack against the Cole." *Id.* at 563. The district court held that the claims were preempted by DOHSA, which "limits compensation 'to prospective and material loss for the relief of others than the decedent-to reimbursement for the post-death "pecuniary" deprivation of his dependents.'" *Id.* at 563 (quoting *United States v. Washington*, 172 F. Supp. 905, 908 (D. Va. 1959)).

In *Howard v. Crystal Cruises, Inc.*, No. 91-642, 1992 WL 194659 (E.D. Cal. Feb. 24, 1992), the decedent died from a blood clot caused by the defendant's negligence on the high seas. The decedent's wife and son sought to amend their complaint to allege NIED. The trial court denied their request, concluding that "DOHSA is intended to compensate the families of the decedents, and it has failed to provide for emotional distress damages." *Id.* at *6. Thus, the court ruled that a NIED claim "is clearly precluded under DOHSA." *Id.*

In *Ostrowiecki v. Aggressor Fleet, Ltd.*, No. 07-6931, 2008 WL 3874609 (E.D. La. Aug. 15, 2008) the decedent died during a scuba diving excursion purportedly caused by the defendant's negligence. In addition to the DOHSA claim, the decedent's survivors also alleged intentional infliction of emotional distress ("IIED"), NIED, and bystander damages pursuant to Louisiana Civil Code article 2315.6. *Id.* at *3.

The trial court rejected the defendant's argument in its motion for summary judgment that DOHSA preempted the plaintiffs' emotional distress claims. *Id.* at *5-6. The court agreed with *Rux* and *Howard* that mental anguish damages caused by the same wrongful acts that entitle a plaintiff to recovery under DOHSA are *not* recoverable. *Id.* However, because the plaintiffs in *Ostrowiecki* sought recovery for emotional damages caused by the defendant's "discrete, *post-death* actions" (e.g., after the decedent went missing, the decedent's daughter was confined to the vessel and the defendant continued the diving trip with her onboard despite the decedent's disappearance), the court held that "the anguish for which [the plaintiffs] seek recovery is separable from the death-related anguish, and it is predicated on entirely different acts of defendants from those which allegedly caused [the decedent's] death." *Id.* at *5.

In *Smith v. Carnival Corp.*, 584 F. Supp. 2d 1343 (S.D. Fla. 2008), a case from this district, the decedent drowned on a scuba diving excursion in the presence of her two daughters (the plaintiffs). In addition to a DOHSA claim against the defendant, the plaintiffs sought to recover for emotional distress that they personally suffered from witnessing the drowning. *Id.* at 1353. District Judge K. Michael Moore held that plaintiffs' emotional distress claims did "not fall within DOHSA's ambit," because "[t]hey are not seeking recovery for their mother's death or her pre-death pain and suffering—only for the emotional distress that has resulted from witnessing it. Indeed, the fact that a death occurred is not essential to their claim." *Id.*

In both *Rux* and *Howard*, the plaintiffs sought recovery for emotional distress directly stemming from (or as an extension of) the *loss* of the decedent, not necessarily from specific *actions* of the defendants towards the plaintiffs or from the *events* surrounding the death (particularly, not from the specific personal experiences of the survivors before, during, and/or after the death of their loved ones). *See Rux*, 495 F. Supp. 2d at 545-47 (Plaintiffs' distress stems from learning of the deaths of their loved ones and suffering from the loss of their loved ones); *Howard*, 1992 WL 194659 (though less clear than in *Rux*, it is apparent that the decedent's relatives sought recovery for NIED based only on the loss of decedent, not for the events leading to decedent's untimely death).[5]

Thus, the claims in those two cases differ in a subtle, yet significant, way from the present case, where the surviving Plaintiffs seek recovery for NIED suffered independent of the *loss* of their loved one.

The plaintiffs in *Ostrowiecki* sought legal relief for the anguish they suffered at the hands of the defendants personally -- not the anguish they suffered from the *loss* of their loved one. 2008 WL 3874609, at *5-6. In addition to that significant factual difference from *Rux* and *Howard*, the *Ostrowiecki* court added that the emotional distress

---

[5]     The decedent in *Howard* suffered an Achilles tendon injury when a gangplank slid into the back of his ankle as he stood on a platform to disembark. Approximately three weeks later, a blood clot that travelled to his lungs caused his death. The lawsuit alleged that the blood clot was caused by the ankle injury. There are no allegations present of any other specific, emotionally-traumatizing event witnessed by the decedent's survivors beyond the loss of the decedent. 1992 WL 194659, at *1.

claims were "predicated on entirely different acts of defendants from those which allegedly caused [the decedent's] death." *Id.* at *5. This second observation (or, perhaps, requirement -- it is not clear if this is the key difference that distinguishes *Ostrowiecki* from *Rux* and *Howard*) primarily distinguishes that case from both *Smith* and the present case.

In both *Smith* and the instant case, the plaintiffs seek to recover for emotional distress that is *not* the anguish of loss, but rather the anguish of the events leading to the loss as **directly and personally experienced by the plaintiffs**. Thus, as the *Smith* court noted, "the fact that a death occurred is not essential to their claim." 584 F. Supp. 2d at 1353. However, unlike *Ostrowiecki*, *Smith* held that the acts of defendants that are recoverable in an NIED claim could overlap with the acts that give rise to the DOHSA wrongful death claim. Having reviewed the statute, the non-binding decisions of the four trial courts above, and the indeterminate rulings of the binding authorities (i.e., *Dooley* and *Higginbotham*), the Undersigned concurs with Judge Moore's decision in *Smith* for the following reasons.

First, citing to *Ostrowiecki*, *Rux* and *Howard*, Defendant argues that *Smith* is the "minority" perspective on the availability of emotional distress claims in a DOHSA action. However, (1) this is not necessarily true because *Ostrowiecki* does allow for emotional distress claims under certain circumstances in DOHSA cases (though, admittedly, the present situation and the situation in *Smith* would not be among those

situations), and (2) even if it were true, this is not necessarily significant given the small sample size of four cases.

Second, as noted above, *Rux* and *Howard* are factually distinguishable from the current case in a very significant way because the plaintiffs in each of those cases sought emotional distress relief stemming directly from the *loss*. Accordingly, those decisions never reached the issue of whether an emotional distress claim is preempted by DOHSA where the plaintiffs seek to recover for emotional distress sustained by them *directly* from the defendant's alleged actions, not the emotional anguish suffered through the loss alone.

Third, in *Dooley*, the Supreme Court, in addressing the question of whether a state survival statute could supplement DOHSA, held that "[b]y authorizing only certain surviving relatives to recover damages, and by limiting damages to pecuniary losses sustained by those relatives, Congress provided the exclusive recovery for *deaths* that occur on the high seas." 524 U.S. at 123 (emphasis supplied). Previously, in *Higginbotham*, the Court held that DOHSA's limit on recovery to "pecuniary loss" meant that survivors cannot recover specifically for "loss of society." 436 U.S. at 618-19. There are no indications in either opinion -- nor in the text of the statute itself -- that DOHSA's preemptions reach beyond the death such that they impact the recovery of those individuals who not just survived the decedent (in the sense that they "outlived" the individual), but *also* survived the same incident which led to the decedent's death.

Allowing such a preemption would lead to perverse results. For instance, the plaintiffs in *Rux* were all relatives of the seventeen sailors who tragically perished in the bombing of the USS Cole. None of those plaintiffs were actually present on the ship when it was attacked -- thus they all sought emotional distress relief based solely upon their loss of a loved one. Hypothetically, if one of the plaintiffs happened to be a relative of those seventeen sailors *and* present at the scene of the USS Cole attack (thereby experiencing the bombing and watching his or her relative perish), then -- under Defendant's and *Ostrowiecki's* interpretation of DOHSA -- that relative/plaintiff would be preempted by DOHSA from asserting an emotional distress claim against the government which allegedly enabled the terrorist attack that left him/her anguished, while a non-relative sailor in the very same room could seek to recover for the distress.

The Undersigned does not agree with Defendant that DOHSA's preclusion of recovery for nonpecuniary damages in a wrongful death case on the high seas should always extend to the *direct impact* of a defendant's actions on surviving plaintiffs. A plaintiff who is present at the scene of a decedent's death and suffers directly from the same negligent act of a defendant should not necessarily be precluded from recovering for his or her own losses in the same way that a non-present plaintiff would be precluded from recovering from the anguish of enduring the loss of a loved one. While the Undersigned agrees with *Ostrowiecki* to a point (i.e., that plaintiffs may recover for anguish that stems not from the loss itself, but from the direct impact of a defendant's

actions on the plaintiff personally), I do not agree that the specific action of the defendant must also be distinct from the action that caused the death in the DOHSA claim.

Admiralty law allows recovery for negligent infliction of emotional distress claims which pass the "zone of danger" test. *Smith*, 584 F. Supp. 2d at 1353-55. The zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, **or** who are placed in immediate risk of physical harm by that conduct. *Id.* This is an entirely different set of circumstances and an entirely different type of claim than the scenarios that Congress addressed in drafting DOHSA -- and what the courts in both *Rux* and *Howard* were addressing. As emphasized above (and in the very name of the act), DOHSA focuses on *deaths* and associated recoveries. It does not naturally follow that the death of one individual due to a defendant's negligence should necessarily impact the claims of *alive* individuals who survived that negligence (either after suffering a physical impact or risking immediate physical impact from the negligence), other than to limit the portion of that recovery that stems from the loss itself.

Accordingly, if Plaintiffs sufficiently allege[6] that they suffered NIED independent of the *loss* of Briana, then DOHSA does not preempt their claim.

---

[6]      *See* part 2 of this analysis below for the determination as to whether Plaintiffs met their burden at the pleading stage concerning the NIED claims.

### 2.   *Plaintiffs allege sufficient facts to support the NIED claims.*

Alternatively, Defendant argues that Plaintiffs do not allege sufficient facts to support their individual claims for NIED. [ECF No. 7, pp. 6-9]. Specifically, RCCL argues that Plaintiffs have not alleged sufficient facts to meet the zone of danger element.

In *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 546-49 (1994), the Supreme Court adopted the zone of danger test for claims brought under the Federal Employers' Liability Act ("FELA"). ("We agree that the zone of danger test best reconciles the concerns of the common law with the principles underlying our FELA jurisprudence."). "[T]he zone of danger test limits recovery for emotional injury to those plaintiffs who sustain a physical impact as a result of a defendant's negligent conduct, or who are placed in immediate risk of physical harm by that conduct." *Id.* at 547–48. In other words, "those within the zone of danger can recover for fright, and those outside of it cannot." *Id.* at 548 (internal quotations omitted).

Consequently, plaintiffs must allege more than merely being a witness to a traumatic event to sufficiently plead NIED; the plaintiff must be, at least, **threatened** with imminent physical impact. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337-38 (11th Cir. 2012).

The Supreme Court's adoption of the zone of danger test for FELA claims has been incorporated into admiralty law. *See Tassinari v. Key West Water Tours, L.C.*, 480 F.

Supp. 2d 1318, 1320-21 (S.D. Fla. 2007) ("[C]ourts have analogized the remedial nature of FELA to maritime law and have used the same zone of danger test and similar reasoning to evaluate negligent infliction of emotional distress claims under general maritime law"); *Williams v. Carnival Cruise Lines Inc.*, 907 F. Supp. 403, 405 (S.D. Fla. 1995) (explaining "the Jones Act fully incorporates [FELA] by reference" and that courts "look to case law developed under the Jones Act in guiding the development of the general maritime law"). Thus, courts applying admiralty law often employ the zone of danger test. *See, e.g., Smith*, 584 F. Supp. 2d at 1354-55; *Tassinari*, 480 F. Supp. 2d at 1320 ("Claims of negligent infliction of emotional distress under maritime law of the United States must survive the zone of danger test."); *White v. NCL America, Inc.*, No. 05–22030–CIV–BROWN, 2007 WL 414331, at *2 (S.D. Fla. Feb. 6, 2007) ("Because Plaintiff's complaint alleges that she was physically injured by Defendants' negligence and that she suffered emotional distress, she falls within the 'zone of danger.'"); *Hutton v. Norwegian Cruise Line Ltd.*, 144 F. Supp. 2d 1325, 1327–28 (S.D. Fla. 2001); *Williams*, 907 F. Supp. at 405–06.

RCCL contends that Plaintiffs' allegations that each one of them -- Marla, Costa, Tatiana and G.E. -- (1) ate only food items prepared by Defendant, just like Briana, and (2) were exposed to Briana's bodily fluids while she was violently ill (while also alleging that person-to-person contact can transmit the Salmonellosis bacteria that Briana

allegedly contracted) are insufficient to allege that Plaintiffs were within the zone of danger. [ECF No. 10, pp. 4-6]

In *Sowell v. Hyatt Corp.*, 623 A.2d 1221 (D.C. 1993), the plaintiff brought a negligence-based emotional distress claim arising from a worm she found in her food. The District of Columbia Court of Appeals determined the plaintiff was within the "zone of danger." It noted that since the plaintiff had consumed most of her food by the time she observed the worm, concern that she could have already ingested a worm placed her within the zone of danger of consuming contaminated food. *Id.* at 1225-26 ("Fear of contaminated food hitting one's stomach is, like fear of being hit by a truck, a fear for one's physical safety."). Additionally, the court noted that "[a]lthough this issue is not before us, it seems clear that unless others at the table had eaten the contaminated food or were in probable danger of eating the contaminated food, e.g., where they were partaking of the same menu item, they would have no reason to fear for their personal safety."

Plaintiffs' complaint alleges that each of the individual Plaintiffs (and Briana) "only consumed food prepared and provided by the Defendant." [ECF No. 1, pp. 3-4]. In the context of this case, where the family is on a cruise together and eating only food from the same source, it is plausible that Plaintiffs had reason to fear for their own safety when confronted with Briana's severe illness, presumably caused by food poisoning.

Defendant additionally cites to *Siegel v. Ridgewells, Inc.*, 511 F. Supp. 2d 188 (D.D.C. 2007) to support its contention that Plaintiffs' allegations of eating food from the same source is insufficient to meet the zone of danger standard. The plaintiff in *Siegel*, a rabbi, sought recovery for NIED based on his possible consumption of non-kosher food served to him by the defendant. At the *summary judgment* phase, the trial court ruled that there was no evidence that the plaintiff "ate any sushi that contained non-kosher items. . . . Although he says he ate sushi until he realized it contained non-kosher food, his *presumption* that he ate non-kosher food, *at this stage of the litigation*, is not sufficient to place him in the zone of danger." *Id.* at 193-94 (emphasis supplied). *Siegel*, however, is a summary judgment case, where a different standard of proof is used. At summary judgment, the plaintiff's presumptions and allegations were insufficient (and that may very well prove to be true at later stages of the present litigation), but that does not mean that such allegations are insufficient to overcome a motion to dismiss.

"To survive a motion to dismiss a complaint must contain sufficient **factual** matter, accepted as true, to 'state a claim to relief that is **plausible on its face**.'" *Iqbal,* 556 U.S. at 678. (quoting *Twombly*, 550 U.S. at 570) (emphasis added). As it stands now, Plaintiffs' contentions -- witnessing Briana's traumatic fight with presumed food poisoning, eating food from the same preparer, being in close proximity to Briana as she vomited and had diarrhea -- have, for now, sufficiently alleged "[f]ear of contaminated

food hitting [their] stomach[, which] is, like fear of being hit by a truck, a fear for one's physical safety." *Sowell*, 623 A.2d at 1225-26. Accordingly, the Undersigned rejects Defendant's argument that Plaintiffs have not sufficiently alleged that they were in the zone of danger.

As briefly noted immediately above, each individual Plaintiff alleged physical contact with Briana herself or her bodily fluids during the course of her severe illness. [*See* ECF No. 1, pp. 6-7]. Plaintiffs further alleged that "person-to-person transmission is consistent with the epidemiology of, and a known mechanism of transmission of, Salmonellosis." [*Id.*, at pp. 19-23]. While Defendant contends that these are not allegations of "actual" exposure to Salmonellosis, the Undersigned disagrees. Plaintiffs alleged (1) that Briana was sick from Salmonellosis, (2) that it is transmittable from person-to-person contact, and (3) that each Plaintiff physically contacted Briana or her bodily fluids during her severe illness. Thus, Plaintiffs have sufficiently alleged that they were within the zone of danger of the Salmonellosis that sickened Briana.

Accordingly, the Undersigned **denies** RCCL's motion to dismiss Plaintiffs' NIED claims.

### B.    Plaintiffs' claims under Florida and Bahamian law in Count III should be dismissed.

Defendant makes several arguments concerning Count III of Plaintiffs' complaint, which alleges -- under Florida's Wrongful Death Act and the Bahamian Fatal

Accidents Law -- that Defendant's negligent hiring, retention and training of shipboard medical staff caused Briana's death. [ECF No. 7 pp. 9-11, 13-16]. The Undersigned does not address the first argument -- that Plaintiffs failed to allege sufficient facts to support such a claim -- because any claim for wrongful death under Florida or Bahamian law (no matter how well-pled) is legally preempted by DOHSA.

It is well-settled that the remedies under the Florida Wrongful Death Act are preempted by DOHSA where the alleged wrongful act on the high seas results in the death of a non-seaman. *See Offshore Logistics Inc. v. Tallentire*, 477 U.S. 207, 227 (1986) (finding that DOHSA preempts conflicting state wrongful death statutes); *Hughes v. Unitech Aircraft Servs.*, 662 So. 2d 999, 1001 (Fla. 4th DCA 1995) (recognizing that Florida's wrongful death statute remedies are preempted by the remedies authorized by DOHSA); *Ray v. Fifth Transoceanic Shipping Co., Ltd.*, 529 So. 2d 1181, 1183 (Fla. 2d DCA 1988) ("[I]n light of DOHSA's application in this case, appellant is barred from seeking recovery under the Florida Wrongful Death Act. . . . State wrongful death statutes are preempted by DOHSA."); *Bailey v. Royal Cruise Lines, Inc.*, 448 So. 2d 1090, 1091 (Fla. 3d DCA 1984) ("DOHSA pre-empts the Florida Wrongful Death Act, section 768, Florida Statutes (1981), for negligence on the high seas resulting in death").

As the allegations of the Complaint reflect, DOHSA applies here, and thus Plaintiffs are not permitted to recover damages pursuant to the Florida Wrongful Death

Act. Rather, Plaintiffs' remedies for the loss of Briana are limited to the pecuniary damages available under DOHSA.

In addition, Plaintiffs' allegations under Bahamian law are similarly preempted. The substantive law applicable to this case, which involves an alleged tort purportedly committed on a cruise ship sailing in navigable waters, is general maritime law, the rules of which have been developed by the federal courts. *See Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 628 (1959); *Keefe v. Bahama Cruise Line, Inc.*, 867 F. 2d 1318, 1320 (11th Cir. 1989).

Courts may not consider the application of foreign law to DOHSA claims where, as here, United States law governs the action. *See Gavigan v. Celebrity Cruises Inc.*, 843 F. Supp. 2d 1254, 1259 (S.D. Fla. 2011) (dismissing claim for negligence under Maltese law brought pursuant 46 U.S.C. 30306 where decedent's death occurred on the high seas, as United States law governed action); *Balachander v. NCL (Bahamas) Ltd.*, 800 F. Supp. 2d 1196, 1202 (S.D. Fla. 2011) (dismissing cause of action based on Bahamian law pursuant to 46 U.S.C. 30306 because plaintiff's causes of action arose under the General Maritime Law of the United States and concluding that DOHSA provided plaintiff's exclusive remedy). "While it is true that pursuant to DOHSA a plaintiff may recover damages under foreign law, . . . that section 'plays no role once a court determines that U.S. law governs an action.'" *Gavigan*, 843 F. Supp. 2d at 1259 (internal citations omitted) (quoting *Dooley v. Korean Air Lines Co., Ltd.*, 117 F.3d 1477, 1484 (D.C. Cir. 1997)).

Plaintiffs concede that "it is at least a near certainty that the United States General maritime Law and DOHSA will apply in this case to the exclusion of any other state or foreign law." [ECF No. 8, p. 16]. However, quoting *Smith*, Plaintiffs claim that it is premature to strike the claims, because "[a]t the pleading stage . . . courts *have* allowed plaintiffs to allege the applicability of multiple bodies of law in the alternative." 584 F. Supp. 2d at 1349-50 (emphasis supplied).

Unlike *Smith*, however, Plaintiffs here do not "allege multiple claims against multiple parties for conduct occurring in multiple locations." *Id.* at 1347. Because of this complicating geographical factor, the *Smith* court determined that "[w]ithout the benefit of discovery or briefing on the issue by the Parties, it is premature to rule on the controlling law of the case." *Id.* at 1349. Plaintiffs' complaint alleges ingestion of contaminated food and negligent medical care on Defendant's ship in navigable waters. [ECF No. 1, p. 4]. Given the clarity of the complaint and the fact that the parties agree that admiralty law (and DOHSA) is the applicable law here, it is not premature to dismiss Plaintiffs' preempted claims under Florida and Bahamas law.

Accordingly, the Undersigned **dismisses** Count III with prejudice.

### C.    <u>Counts I through VII should not be dismissed as an impermissible shotgun pleading.</u>

RCCL next contends that Plaintiffs' complaint as a whole should be dismissed without prejudice as a so-called "shotgun pleading," in violation of Federal Rule of Civil Procedure 8. [ECF No. 7, pp. 11-13].

"Shotgun pleadings are those that incorporate every antecedent allegation by reference into each subsequent claim for relief or affirmative defense." *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1279 (11th Cir. 2006) (citing *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) (per curiam)). "[S]hotgun pleadings wreak havoc on the judicial system." *Byrne v. Nezhat*, 261 F.3d 1075, 1130 (11th Cir. 2001). Such pleadings divert already stretched judicial resources into disputes that are not structurally prepared to use those resources efficiently.

Contrary to Defendant's assertion, Plaintiffs' complaint does not constitute a shotgun pleading. Plaintiffs' complaint does reference previously-asserted *facts* in each count, however that does not necessarily make it a shotgun pleading in violation of Federal Rule 8. Plaintiffs' complaint is a total of 123 paragraphs, including 54 paragraphs that establish the facts of the case generally at the outset. [ECF No. 1]. The complaint is organized and each count includes specific allegations unique to the claim alleged. This is not a shotgun pleading.

Accordingly, the Undersigned **denies** Defendant's procedure-based motion to dismiss all counts without prejudice.

    **D.**    **Plaintiffs are sufficiently clear as to who represents Briana's estate.**

Finally, Defendant claims that Counts I, II and III (the wrongful death counts) can only be alleged on behalf of Briana's estate (i.e., through Marla in her capacity as *administrator ad prosequndum*). RCCL alleges that the complaint is ambiguous as to whether it is only Marla, in her role as the representative of Briana's estate, who may recover for the wrongful death claims. As noted above, Count III is being dismissed, so the Court will address only Counts I and II.

Having reviewed the complaint, the Undersigned finds that Defendant is being overly technical. There is clearly no confusion as to who is bringing the wrongful death claims as they are based upon Briana's death and only one named Plaintiff is listed as the *administrator ad prosequndum* for her in this lawsuit. While the demand portion of the pleadings refers only to "Plaintiff" and not Marla on behalf of Briana's estate [ECF No. 1, pp. 13, 15], in the context of the complaint as a whole, there is no confusion as to who "Plaintiff" is representing or the capacity in which she is pursuing the representation.

Accordingly, the Undersigned **denie**s Defendant's motion to strike Counts I, II and III.

## IV.   CONCLUSION

For the reasons outlined above, the Undersigned grants in small part and denies in large part Defendant's motion to dismiss. Count III of the complaint is hereby dismissed with prejudice because it is preempted by DOHSA.

**DONE AND ORDERED** in Chambers, in Miami, Florida, March 29, 2016.

_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
All counsel of record