# INDEPENDENT CONTRACTOR
# SENIOR PHYSICIAN AGREEMENT
# Royal Caribbean Cruises Ltd.
# (Rev. 7.18.13)

**THIS AGREEMENT** made on this date: **15 Jul 2013 07:20**, effective upon signing by both parties, between Royal Caribbean Cruises Ltd. (herein, "Royal Caribbean" and/or "company"), with offices at 1050 Caribbean Way, Miami, Florida 33132 U.S.A., and the below named physician (herein, "physician" or "doctor"):

- **Physician: Dr Dean Hamilton** (herein "physician")
- **Date of birth:** _____
- **Place of birth: Vancouver, Canada**
- **Staff member's home address** _____
- **Assigned Ship: Explorer Of The Seas**
- **Shipowner**: Royal Caribbean Cruises Ltd., 1050 Caribbean Way, Miami, Florida 33132 U.S.A.
- **Payment: $** _____ per month ( - * Pro Rata)
- **Contract Period:** from **25 Jul 2013** to **21 Jan 2014**
- **Crew ID**: 238219

**WHEREAS**, Royal Caribbean operates passenger cruise vessels and, physician desires to work onboard a Royal Caribbean cruise ship,

**NOW THEREFORE, the parties agree as follows:**

## 1. SCOPE OF SERVICES:

- **(a) Ship Physician Ultimate Responsibility Clause:** The ship physician understands and agrees that any/all medical and/or patient care decisions onboard the ship will remain the ultimate responsibility of the ship physician, regardless of any/all input, comment(s), consultation(s), recommendation(s), advice or communication(s) from any employee or agent of the company, and at no time shall any such input, comment(s), consultation(s), recommendation(s), advice or other communication(s) from any employee or agent of the company be construed to replace the independent onsite clinical judgment and independent professional responsibility of the ship physician. All medical practitioners enjoy full professional independence in exercising their medical judgment in undertaking medical examination procedures.

- **(b) Personal Expenses:** The above named physician is responsible for any expenses incurred for all Medical Examinations necessary under international regulations for the physician to work on

board a vessel, ACLS certification or recertification, medical licenses, continuing education credits and passport fees. Any charges incurred to obtain necessary VISA(s) to travel will be reimbursed by the company.

- (c) **Travel - Airline ticket(s) and Lodging:** An airline ticket from the doctor's gateway city to the designated ship will be provided by the Company. Lodging will be provided if necessary and as determined and arranged by the company. Ground transportation expenses incurred for travel from the arrival airport to the vessel will be reimbursed on board, receipts must be provided. An airline ticket will be provided for repatriation to the doctor's gateway city at the conclusion of the contract period, if the agreement is terminated without cause by the company, if the doctor terminates the agreement with good reason or if the doctor requires repatriation due to a covered illness or injury. In the event of a with cause termination of the agreement, the doctor shall be responsible for repatriation costs. Lodging and ground transportation expenses will be reimbursed until the doctor reaches the gateway city with no intentional travel deviations or delays accommodated without prior written permission from the company.

- (d) **Independent Contractor:** The parties agree that the above named physician is independently contracted to provide professional medical services onboard the above named Royal Caribbean ship, and at all times material hereto, the physician shall operate as, and be considered, an independent contractor, and not an employee of Royal Caribbean or any of its ships or subsidiaries.

- (e) **Sailing Privileges:** The above named physician will be eligible for cruise rates in accordance with the terms and conditions detailed in the company SQM manual. As stated in SQM, a *returning* physician serving a full contract will be permitted to have his/her spouse and minor children on board for a maximum of four weeks in the Doctor's cabin free of charge. Children travel requests will be granted at the respective Master's discretion, dependent upon factors including other family visits at the time and officer seniority. At no time will an unaccompanied minor be permitted as a guest. The physician will be responsible for his/her family's transportation expenses to and from the vessel. There will be a daily charge equivalent to the cost of gratuities.

- (f) **One Time Overlap Period:** Physicians joining Royal Caribbean for their first contract with the company will be offered a 1 week overlap period to facilitate a smooth transition into the role of shipboard physician.

- (g) **Notice Provision:** In the event the physician cannot fulfill the stated shipboard term of this contract for any reason, physician agrees to provide the company with a minimum of 14 days written notice. In the event it becomes necessary for the physician to leave the ship for a period exceeding ten (10) days for any reason, this contract shall be considered terminated by the physician. Physician understands and agrees that the Company may terminate this agreement with or without cause. If the company elects to terminate this agreement *without* cause, the company agrees to provide 7 days notice, or 7 days pay in lieu of notice. When/if necessary, the ship's physician(s) may be transferred to any Royal Caribbean vessel during the tenure of this contract,

under the aforementioned conditions.

- (h) **Hours:** It is further understood and agreed that the physician will be present in the medical facility for physician clinic hours as per the agreed ship schedule. In addition, the physician will be available "on call" **24/7** for any medical emergencies outside those designated clinic hours. For vessels with two physicians, one physician must be on the vessel at all times. For vessels with one physician, when the ship is docked, either the physician or a nurse must remain onboard the ship at all times. Where the ship is tendering, the doctor must request permission of the master to go ashore. The ship's physician must carry a two way radio at all times.
- (i) **Ship Phones and Cell Phones:** The above named physician understands and agrees that all ship's phones and medical facility cell phones are for professional / business purposes only. Telephone calls can and will be monitored on a per cruise and per position basis. All persons are encouraged to purchase calling cards for all personal calls.
- (j) **Taxes:** The parties agree that it is the sole responsibility of the doctor to report compensation earned under this contract to any and all tax authorities that may have jurisdiction over the doctor by virtue of tax residence or any other means, and to compute and pay any taxes of whatever nature that may be due thereon to that taxing jurisdiction. It is understood that Royal Caribbean is not required to report and withhold income taxes, social insurance taxes or any other kind of tax from the compensation paid under this contract. Such position is applicable only to Royal Caribbean as payor of the compensation under this agreement and is not intended to be nor should it be considered an opinion or a conclusion that such income is not subject to tax in the hands of the doctor in any relevant jurisdiction. Further, the doctor agrees to fully indemnify and hold Royal Caribbean International and Royal Caribbean Cruises Ltd., harmless in the event any jurisdiction successfully imposes any form of employment tax, income tax or social insurance tax on the compensation paid under this agreement, and, in such event, the ship doctor named in this contract agrees to fully reimburse Royal Caribbean for any such taxes paid plus penalties and interest assessed thereon.
- (k) **Insurance / Liability:** As a convenience to the named physician, the company has secured a basic insurance coverage for the doctor not to exceed the sum of one million United States dollars ($1,000,000) per medical malpractice incident. The company reserves the right to appoint an attorney paid for by the company to represent the doctor in the event of an actual or alleged civil medical practice allegation. Any or all of the provisions of the agreements in this contract may be waived or deemed waived by the company if, in the company's discretion, the company determines that the physician named in this contract has breached this contract or is in violation of one or more of the enumerated physician warranties.
- (l) **Medical Care:** If the physician requires shoreside medical care for an illness or injury arising during the contracted period of service on the vessel, Royal Caribbean will cover all approved reasonable costs as determined by the company associated with providing care up to physician's maximum medical improvement (MMI) as declared by a company approved doctor. Continuing

medical care is not due for chronic, incurable and permanent medical conditions as declared by a company approved doctor. Medical care is not due for pre-existing medical conditions not disclosed during the pre-engagement medical examination process or for medical conditions arising due to the misconduct of the physician including, but not limited to, drug or alcohol use.

•(m) **Sick Payments:** Should the above named shipboard physician become sick or injured during the course of this contract and unable to fulfill his or her duties during the balance of the contract subject to the exclusions noted in the medical care section above, the physician shall be eligible for unearned sick payments for a maximum period of sixteen (16 weeks) or until the doctor reaches MMI, whichever occurs first.. Any/all such payments shall be in lieu of all other claims for payments or wages under either the physician's contract or the provisions of maritime law, no matter how such is defined.

•(n) **Death Payment:** If the above named shipboard physician dies while in the service of the ship, including a death while travelling to and from the ship, the Company shall pay a death payment to the designated beneficiary in the amount of USD$75,000 plus USD$16,000 per child under the age of twenty-one (21) up to a maximum of four children. The shipboard physician is responsible for declaring the beneficiary at the time of engagement and updating the beneficiary forms in the HR Center. No death payment shall be due if the death was the result of misconduct, including but not limited to drug and/or alcohol use, or if the death was the result of a known pre-existing medical condition that was not declared during the pre-employment medical examination. Any death payments made under this section shall be deducted from any award, settlement or recovery of damages received by the heirs of the doctor in connection with any claim or lawsuit arising out of the death of the doctor.

## 2. PHYSICIAN AGREES, WARRANTS AND PROMISES:

*The above physician agrees, warrants and promises as follows:*

•(a) That physician has graduated from an accredited medical school, has maintained any/all required continuing medical education (CME) requirements necessary to maintain his or her medical license, and is in possession of a valid medical license which is fully active and current, and which shall remain fully active and current throughout this entire contract period with the company. Physician agrees he/she is subject to an affirmative duty and obligation to immediately report any full or partial revocation, expiration, lapse or other change in medical license status to the Director, Medical Operations or VP, Global Chief Medical Officer.

•(b) That, in order to maintain individual competence and expertise, physician agrees to at all times maintain a minimum of 40 hours of Continuing Medical Education (CME) credits per calendar year offered and approved by or through a recognized and approved certifying agency such as the American Medical Association (AMA), the Society for Academic Continuing Medical Education (SACME), the Accreditation Council for Continuing Medical Education (ACCME), the Royal College of Physicians and Surgeons of Canada (RCPSC), or other recognized and approved certifying agency.

- (c) That physician has achieved the minimum three (3) years post-graduate supervised training in a primary care specialty (i.e., general or family practice, internal medicine, emergency medicine); or, 2 years supervised training experience if the last year of a five (5+) year or more medical school curriculum consists of a solely supervised clinical practice.
- (d) That physician has been continuously engaged in medical practice since the completion of his/her training and residency with no lapses or unexplained gaps in employment or practice of medicine.
- (e) The above named physician is responsible for any expenses incurred for Medical Examinations necessary to work on board as per international regulations, ACLS certification or recertification, medical licenses, continuing education credits, passport, or any charges incurred to obtain necessary VISA(s) to travel, or any other requirements to qualify for the position.
- (f) That physician can provide documentation that he/she has received Advanced Life Support (ALS) training or the equivalent.
- (g) That physician is competent in the following medical skills, including, but not limited to, management of cardiac arrest and other critical care emergencies, endotracheal intubation, use of fibrinolytic/thrombolytic agent(s), suturing, wound management, diagnosis and stabilization of fractures, reduction of common dislocations.
- (h) That physician has disclosed all known active or inactive, past or present, medical malpractice claims and/or other cases or claims involving the physician.
- (i) That physician has never had his/her medical license revoked, suspended or limited in any way, in any jurisdiction, of any state or country.
- (j) That physician has no physical, mental or medical impairment or limitation which would prevent physician from performing the essential job functions of the position.
- (k) That, throughout the course of physician's career practicing medicine, physician has not been convicted of a serious crime. If so, physician is to provide written explanation.

## 3. FORUM SELECTION CLAUSE FOR ALL LAWSUITS; CLASS ACTION WAIVER:

- (a) In the event of any and all disputes regarding these terms and conditions by physician or former physician and against Company, including but not limited to claims for damages under the laws of any nation arising from death, disability, illness, personal injury, negligence, unseaworthiness, discrimination, or intentional act, the parties hereto shall consult and negotiate with each other and, recognizing their mutual interests, attempt to reach a solution satisfactory to both parties. If the parties do not reach settlement within a period of 60 days, then either party may, by notice to the other party and the International Centre for Dispute Resolution, a division of the American Arbitration Association, demand mediation under the Mediation Rules of the International Centre for Dispute Resolution. If settlement is not reached within 60 days after service of a written demand for mediation, any unresolved controversy or claim arising out of or relating to this contract shall be settled by arbitration administered by the International Centre for Dispute Resolution in accordance with its International Arbitration Rules, and any/all arbitration will be held in London, United

Kingdom, by a single arbitrator, and all negotiations, mediation and arbitration will be conducted in the English language, and each party will be responsible for, and bear any/all direct and/or indirect costs of, such dispute, mediation and/or arbitration.

•(b) **Class Action Relief Waiver:** Physician hereby agrees that physician may bring claims against Royal Caribbean only in physician's individual capacity. Even if the applicable law provides otherwise, Physician agrees that any arbitration or lawsuit against Royal Caribbean shall be litigated by Physician individually and not as a member of any class or as part of a class or representative action, and Physician expressly agrees to waive any law entitling Physician to participate in a class action.

•(c) **Time Limits For Personal Injury/Illness/Death Claims:** No suit shall be maintainable against Royal Caribbean for personal injury, illness or death of the named physician unless written notice of the claim, with full particulars, shall be delivered to Royal Caribbean at its principal office within six (6) months from the date of the injury, illness or death and suit is commenced (filed) within one (1) year from the date of such injury, illness or death and process served within 120 days after filing, notwithstanding any provision of law of any state or country to the contrary.

•(d) **Time Limits For Non-Injury/Illness Or Death Claims:** No proceeding described above may be brought against Royal Caribbean unless written notice of the claim, with full particulars, shall be delivered to company at its principal office within thirty (30) days after termination of this contract. In no event shall any such proceeding described in section be maintainable unless such proceeding shall be commenced (filed) within six (6) months after the termination of this contract and valid notice or service of such proceeding is effected within sixty (60) days after filing, notwithstanding any provision of law of any state or country to the contrary.

•(e) **Anti-Bribery Provision:** Physician represents, warrants and agrees that it: (a) will comply with all anti-corruption laws applicable to its business operations; (b) has not and will not offer, promise, give or authorize the payment of anything of value (e.g. cash or cash equivalents, gifts, travel and entertainment, stock, offers of employment, etc.), directly or indirectly, to any Government Official with the intention of inducing him or her to engage in improper or unlawful conduct or to secure an improper business advantage; (c) has not and will not make facilitation payments or "grease payments" to Government Officials or others in a position of authority to expedite routine non-discretionary government or lawful actions (e.g. processing permits, visas and licenses, scheduling inspections, clearing customs, etc.); and (d) has not and will not offer, promise, give, request, receive or accept anything of value, directly or indirectly, to or from any person for the purpose of influencing, inducing or rewarding the improper performance of an act or decision. For purposes of this clause, the term "Government Official" means any (a) officer or employee of government, department, agency, or instrumentality of a government (government-controlled enterprise); (b) officer or employee of a public international organization; (c) political party or party official; (d) candidate for political office; or (e) other person acting in an official capacity. Physician agrees that failure to comply with this section will constitute a material breach of this Agreement.

- (f) **Confidential Information:**
- (i) <u>Definition</u>. For purposes of this Agreement, the term "Confidential Information" means any proprietary, confidential or non-public information concerning RCL, its subsidiaries or affiliates, whether disclosed to Physician directly or indirectly through an agent or advisor, in writing, orally or electronically, including, without limitation, information relating to the projects, know-how, financial data, designs, processes, plans, strategies, forecasts, market intelligence, concepts, assets, contractors, suppliers and guest information, pricing information, marketing strategies, purchasing, sales and other business methods and agreements, compensation information, trade secrets, trademarks or service marks, operating data, organizational and cost structures, now or hereafter existing or previously developed or acquired. The status and terms of any discussions between RCL and Physician regarding the Scope of Services shall also be treated as Confidential Information.
- (ii) <u>Exceptions</u>. Notwithstanding the provisions of paragraph (a) above, Confidential Information shall not include any information that (i) was publicly known and made generally available in the public domain prior to the time of disclosure by RCL to Physician; (ii) becomes publicly known and made generally available after disclosure by RCL to Physician through no action or inaction of Physician; (iii) is properly possessed by Physician before receipt thereof from RCL; or (iv) which is independently developed by Physician without any reliance on Confidential Information.
- (iii) <u>Return of Information</u>. Upon termination of this Agreement, or upon the earlier written request of RCL, Physician will immediately deliver to RCL without making or retaining any copies, notes or excerpts thereof in any form or manner, all Confidential Information and any and all copies thereof.
- (g) **Severability:** Any provision of this Agreement that is determined in any jurisdiction to be unenforceable for any reason shall be deemed severed from this Agreement in that jurisdiction only and all remaining provisions shall remain in full force and effect.

**IN WITNESS HEREOF**, the parties have set their signature on this date.

This document was eletronically signed by Dr Arthur Diskin on 15 Jul 2013 07:20
This document was eletronically signed by Dr Dean Hamilton on 08 Jul 2013 21:45

*Pro Rata – means that if the physician works only part of a month (i.e. 15 days) s/he will be entitled to a pro rata share (15 days) of the total monthly payment for those full days actually worked, and not for the entire total monthly payment. The day is pro rated to include the day the physician reports to work on the ship, not including travel dates to/from the ship.*