UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION



FILED BY _____ D.C.

DEC 06 2017

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - W.P.B.

MARLA MARTINS, individually and as Administrator Ad Prosequendum for the Estate of BRIANA MARTINS, Decedent, MARCELO COSTA and G.E., a minor, by and through her grandmother, legal and natural guardian, and next friend, MARLA MARTINS; and TATIANA MARTINS,

    Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES LTD.,

    Defendant.

CASE NO. 15-cv-21124-MARTINEZ/GOODMAN

## PLAINTIFF MARLA MARTIN'S MOTION TO ALTER AND AMEND JUDGMENT UNDER FEDERAL RULE 59 AND OTHER RELIEF

Plaintiff Marla Martins acting pro se respectfully moves this Court under Federal Rules of Civil Procedure to alter and amend a Final Judgment entered on Nov. 8, 2017 under Docket Entry No. 183 which Dismissed the instant case with prejudice. Plaintiff relies upon the within Motion and Memorandum and attached Declaration

of the Plaintiff and upon the official records and documents and Orders of the case as reflected in the Docket.

Plaintiff specifically relies upon at least 2 clear manifest errors of law and at least one clear error of fact in support of the motion and seeks to have the Judgment vacated and the case returned to the active Calendar and seeks to have Discovery re-opened and a new Pre-Trial Scheduling Order and new Trial scheduled. Plaintiff makes this motion timely within 28 days of the Judgment and seeks operation of Federal Rule of Appellate Procedure 4 to extend the time for filing a Notice of Appeal herein.

Because Plaintiff reasonably believes in good faith that some of the conduct of the Trial Court shows bias and prejudice against her as a pro se Plaintiff, Plaintiff further seeks to have Trial Court Judge Goodman recused upon the vacating and opening of the Judgment. Plaintiff further seeks leave to brief the Discovery and related issues upon the case being opened and re-instated.

## Federal Rule 59

As the 11th Circuit said in Benny Jacobs, Wanda Jacobs, v. Tempur-Pedic International, Inc. Tempur-Pedic North America, Inc., ( 11th circuit 2010 ), "In Arthur v. King, we observed that

'[t]he only grounds for granting [a Rule 59] motion are newly-discovered evidence or manifest errors of law or fact.' In re Kellogg, 197 F.3d 1116, 1119 (11th Cir.1999). '[A] Rule 59(e) motion [cannot be used] to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment.' Michael Linet, Inc. v. Village of Wellington, Fla., 408 F.3d 757, 763 (11th Cir.2005)."

500 F.3d 1335, 1343 (11th Cir.2007) (per curiam) (alterations in original).

Rule 59(e) permits a district court to entertain a motion to alter or amend a judgment. A claimant can invoke the rule to direct a court's attention to matters such as newly discovered evidence or a manifest error of law or fact. See Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191-92 (7th Cir.1990). The rule essentially enables a district court to correct its own errors, sparing the parties and the appellate courts the burden of unnecessary appellate proceedings. Charles v. Daley, 799 F.2d 343, 348 (7th Cir.1986), See, RUSSELL, Plaintiff-Appellant, v. DELCO REMY DIVISION OF GENERAL MOTORS CORPORATION, United States Court of Appeals,Seventh Circuit. 1995.

## Trial Court's Denial of Continuance was an Abuse of Discretion and Manifest Error of Law by Not applying the 11th Circuit 4 Factor Test

As the 11th Circuit said in Quiet Technology DC-8 v. Hurel Dubois, UK Ltd., 326 F.3d 1333 (2003), "In *Hashwani v. Barbar*, we adopted a four part standard for evaluating claims that a district court abused its discretion by denying a request for

a continuance. We held: First, we consider the extent of appellant's diligence in his [or her] efforts to ready his [or her] defense prior to the date set for hearing. Second, we consider how likely it is that the need for a continuance could have been met if the continuance had been granted. Third, we consider the extent to which granting the continuance would have inconvenienced the court and the opposing party, including its witnesses. Finally, we consider the extent to which the appellant might have suffered harm as a result of the district court's denial." While these errors are reviewed under the abuse of discretion standard, the 11th Circuit has cited to the 5th Circuit case of Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co., 423 F.2d 842, 844 (5th Cir.1970) which provides guidance on the abuse of discretion standard.

As the 5th Circuit said in that case, **"Abuse of judicial discretion" as the basis for reversal of a trial court's judgment has more bark than bite — in terms of the reviewing court's assessment of the trial judge's exercise of discretion.** <u>Here, for example, our holding involves no criticism of the district judge. The magic words mean only that in the light of the record as a whole this Court feels that the denial of the motion for a continuance severely prejudiced the defendant; that, on balance, the interests in favor of a fair trial heavily outweighed the interests in favor of an immediate trial.</u> The trial judge did not have the benefit of the

hindsight this Court has as a result of reading the record. When the case was called for trial, it may have appeared to the trial judge to have been a relatively simple breach-of-contract action, which local counsel was well enough prepared to handle. In the light of the record, we find that the matter was hotly contested on the facts and at issue were a number of legal questions, including (1) proper application of the law of accord and satisfaction, (2) the propriety of awarding anticipatory profits, and (3) the right to punitive damage in a suit of this sort.

In Anglo-American law, with trials based on the adversary system as the best means of arriving at a just and legal result, the interests of justice in this case required that both parties be represented by able counsel well informed on the facts and the pertinent law. The illness of the defendant's principal attorney and local counsel's relative unfamiliarity with the case tipped the scales so heavily in favor of the plaintiff as to effectually deprive the defendant of its rightful day in court.

This conclusion does not undermine the rule in this Circuit that the granting or refusal of a continuance is a matter of judicial discretion and the trial court's judgment will not be reversed unless abuse is shown. Thompson v. Fleming, 5 Cir. 1968, 402 F.2d 266; Peckham v. Family Loan Company, 5 Cir. 1959, 262 F.2d

422.", See, Smith-Weik Mach. Corp. v. Murdock Mach. & Eng'g Co., 423 F.2d 842, 844 (5th Cir.1970)

## The Transcript of Nov. 6, 2017 and the Judgment Dismissing the Case with Prejudice Make it Clear the Trial Court did Not Apply the 4 Factor Test and thus Committed a Manifest Error of Law

Plaintiff had made its very first motion for a Continuance on the day of Trial, however, many of the issues raised by the Plaintiff had been known to the Court for an extensive period of time. The Transcript ( Docket Entry No. 186 ) and Final Judgement ( Docket No. 183 ) make it crystal clear that the Trial Court did not apply the 4 Factor test or allow a proper Record to be made by Plaintiff to support the Continuance. This manifest error of law must now be corrected on the Rule 59 motion herein.

Defendant Royal Caribbean, however, had made prior motions to change the Trial Date which had been granted and prior motions for extensions of time. In fact the Trial Dates had been changed 2 prior times while Plaintiff was represented by counsel and Defendants also sought this change of the Trial date. Multiple motions had been made for extending Discovery while Plaintiff had been represented by Counsel and multiple Discovery Conferences had been held alleging Defendant

Royal Caribbean had been not in full compliance with Discovery. In fact, the Trial Court had to be well aware of the prior history of the complexity of the Discovery issues based on these filings and most importantly, from what appears at best to be conduct demonstrating the appearance impropriety involving the Trial Court and Defense Counsel and Plaintiff's prior counsel occuring at a Telephonic Conference on Sept. 15, 2017 **where a "secret settlement" in Judge Goodman's own words was being put into place during a call that Plaintiff was not a part of** which also had discussions of **"drinking"** and **"pizza shop Owners"** and **Football players Dan Marino and Investors and Rock concerts.** Yet, **Plaintiff would not get the same consideration of time from the Trial Court to make a proper Record when moving orally on Nov. 6, 2017 after filing a written motion for a Continuance earlier that day which did not get Docketed for several days.** See annexed Declaration of Plaintiff.

See as follows:

Docket No. 12 - 6.15.15 - Jury Trial set for 12/28/2015 - First Trial Date

Docket No. 15 - 8.11.15 - Amended Joint Motion for Pre-Trial Conference

The parties filed their Joint Scheduling Report on June 12, 2015, which indicated the parties would exchange Rule 26 Initial Disclosures on June 26, 2015, and which requested a trial setting in October of 2016. [D.E. 11].

13. Plaintiffs wish to depose the shipboard medical staff who provided the medical care and treatment to the decedent aboard the Defendant's vessel. **The shipboard medical staff are presently scattered across the globe.** Dr. Dean Hamilton is aboard Defendant's Reflection vessel with a port of call in Rome, Italy; Dr. Ariel Del Rosario is aboard Defendant's Equinox vessel with ports of call in Barcelona, Spain and Istanbul, Turkey; Nurse Lilabeth is aboard Defendant's Radiance vessel with ports of call in Vancouver, Canada and Seward, Alaska; and Nurse Mae Catulmo is aboard Defendant's Splendor vessel with a port of call in Venice, Italy.

14. Defendant's Rule 26 Initial Disclosures identified additional employees of the Defendant **with knowledge concerning the decedent's death that are also all over the world.** Sampat Mahagonkar is aboard Defendant's Explorer vessel with a port of call in England and Captain Hendrik Loy is the only witness with a local port of call as he is aboard Defendant's Independence vessel with a port of call in Ft. Lauderdale. Plaintiffs may wish to depose these witnesses.

15. **The parties wish to conclude most, if not all, of this needed discovery before meaningful expert discovery can be accomplished.**

19. **Additionally, the parties cannot coordinate and complete the depositions of witnesses presently scattered across the globe before the expiration of expert witness deadlines. Moreover, the experts cannot finalize their opinions until the depositions of the eyewitness Plaintiffs can be completed.**

21. Alternatively, the parties welcome an opportunity to submit a proposed **modified Scheduling Order** in lieu of a Status Conference if the Court is so inclined and satisfied with the explanation provided herein as to the unique circumstances involved.

Docket No. 16 - 8-27-15 JOINT MOTION TO EXTEND EXPERT WITNESS AND REBUTTAL EXPERT WITNESS SUMMARIES AND REPORTS

8. The parties filed their Joint Scheduling Report on June 12, 2015, which indicated the parties would exchange Rule 26 Initial Disclosures on June 26, 2015, and **which requested a trial setting in October of 2016**. [D.E. 11].

Docket No. 22 - Sept. 25, 2015 ORDER SPECIALLY SETTING CIVIL JURY TRIAL AND PRETRIAL SCHEDULE AND REQUIRING MEDIATION Trial is scheduled to commence on Monday, October 24, 2016 at 9:30 AM - Experts

160 days; Expert Reports 150 days; 150 days Parties shall furnish opposing counsel with a written list containing the names and addresses of all witnesses intended to be called at trial and only those witnesses listed shall be permitted to testify.

As the Docket clearly reflects and the Trial Court was clearly aware of, the Trial Court had in essence granted an 18 month period of time with 5 months advance completion of Discovery before Trial while Plaintiff had her prior attorney and yet when Plaintiff went Pro Se, she was given a 6 month period of time to complete what the experienced lawyers needed 18 months to complete and yet the Trial Court had struck the provisions requiring the the Expert Witnesses and related Discovery be completed 150 days before Trial and simply had closed Discovery despite an A Motion to Amend the pleadings being pending and Daubert issues and other Discovery at the time the "secret settlement" is entered into.

**In other words, Pro Se Plaintiff Marla Martins was given less than 6 months to do what experienced lawyers needed 18 months to do and then was Denied a Continuance without the 4 Factor Test being applied. This was manifest error that must now be corrected and the Judgment vacated and the case restored to the calendar for further Pre-Trial and Trial proceedings.**

Perhaps Defendant Royal Caribbean's attorney says it best when claiming that any other 3rd party trying to figure out what he and the Plaintiff's prior lawyer and the Trial Court had done would have a very difficult time saying,

MR. DRAHOS: Okay. Because I think my perspective
on this would be helpful for the Court, as well.
And that is that, you know, I've been doing
shipboard medical malpractice work now for over 14 years, and
**I can tell Your Honor that this particular case has involved
complex medical issues, more complex than the typical case
that I work on. And so I would have concern from the defense
perspective that someone coming in and reviewing this case and
beginning to question, you know, what had gone on, really
would not be in a good position to do that.** They have not sat
through two years of depositions that we have, both Mr. Brill
and Mr. Rinaldi and I have fought over over the last two
years. They haven't spent the time with the experts like I
have, and Mr. Brill and Mr. Rinaldi has, **and I just don't
think could get a clear picture of exactly what this case is
and what it's like and how it would present in an abbreviated
period of time.**

So I don't know the dynamics between Marla and this
father, but, quite frankly, from just a legal point of view
and an experienced medical malpractice defense attorney point
of view, I believe that Mr. Brill and Mr. Rinaldi are in a
much superior position to make this decision than some
independent third lawyer coming in and looking at it, and I
would have concerns. **Because this has been a delicate
negotiation that we've worked on up through today, Your Honor**

See, Docket Entry No. 124 Sept. 15, 2016 finally available months later on Feb. 1, 2017.

Still further, the Transcript shows the close relationship between the Court and the Plaintiff's prior lawyer "flattering" the Court and talking of Drinking and more:

**Docket No. 124  Telephonic Conference of Sept 16, 2016 not entered until Feb. 1, 2017**

**Brill - Page 5**

**and that
settlement agreement fundamentally calls for the parties to
refrain from trying this case, and <u>instead put the faith in
Your Honor's ruling on the defendant's motion for summary
judgment,</u> which would necessarily need to include a decision
on the NIED issue act as the verdict in the case.  So in a
nutshell, that's where we are.**


**Page 16
We -- we would like Your Honor to kind
of know as little about that as possible, only because we want
Your Honor to have no preconceived ideas, and because, <u>not to
just be flattering to Your Honor,</u> because this is true from
both parties, we had -- both parties have faith in Your Honor
to rule on the summary judgment based on the facts and the
law, without any idea of what the settlement would entail.
And really, Your Honor, you should take that exactly
how we intend it, because if it were another judge, that
settlement wouldn't go that way.  And so we were a little
apprehensive to give you any detail, of course, unless Your
Honor requires it.  <u>You're the boss,</u> and we will do it if you
insist.  We would just prefer not to tell you any more so that**

we don't have you subconsciously think anything other than
doing exactly that.
THE COURT:  I understand.
MR. BRILL:  Does that make sense?
**<u>THE COURT:  That makes perfect sense.</u>**

**First of all, thank you for those flattering comments. I didn't realize that you started to drink at 4:45 in the afternoon. You're apparently under the influence of alcohol.**
**MR. BRILL: That's awesome.**
**THE COURT: So thank you for those comments. I appreciate them.** And I really don't need to know anything at all about the details of the settlement, nor do I need to know the general framework. Page 17

And goes on further to say,

And then, number four, I would issue a ruling on the summary judgment motion that we all could be proud of, especially me. And I thank you for your confidence in whatever that ruling would be.

And also, I would stay, at your request, a ruling on the Daubert motion for the same reason. Once there's a ruling on the summary judgment maybe these issues will be relevant, maybe they won't. Who knows? But for the time being, it will just be requested administrative stay of the motion to amend and the Daubert motion, and then I'll issue a summary judgment order, and I will do my best to keep it under 150 pages.
MR. DRAHOS: Sounds good to me, Your Honor.
THE COURT: All right?
MR. BRILL: 150 pages, and decided by next Tuesday.
THE COURT: There you go; by 9:15 a.m.
So how does that methodology, protocol sound to you folks? Any major heartache about that approach?
MR. DRAHOS: I think you said it well, Your Honor.
THE COURT: All right.
MR. BRILL: I think it's -- I think it's excellent, as well, sir.
THE COURT: Okay. Very good.
Well, you're right. This is a fascinating case, and I agree with your assessment that it is hardly your garden variety malpractice case, and it does involve some very meaty

and thought-provoking and stimulating issues. So thank you for giving me the opportunity for -- to look into it.

Page 18,
**So I'm saying to myself, how can we go ahead and take steps which, in effect, are sort of like a secret settlement?** And I don't say that to say that any of you have done anything improper. ( By Trial Court Judge Goodman ).

The Transcript goes on to discuss difficult Clients and Doctors having to say privilege to examine them and then difficult law clients and discussions of Owners of Pizza joints and Dan Marino as and Investor and favorite places to eat and rock concerts he sees. Etc. See Docket No. 124.

Further items of the Docket and history that should have been considered by the Trial Court when Pro Se plaintiff files her first motion for Continuance are as follows:

Docket No. 19 NOTICE of Hearing by ATTORNEY: Discovery Hearing set for 11/20/2015 02:30 PM before Magistrate Judge Jonathan Goodman. (Attachments: # 1 Exhibit Discovery Objections in Dispute) (Rinaldi, Joseph) (Entered: 11/19/2015)

Docket No. 27 11.23.15 For the reasons set forth at the Hearing,2 the Undersigned ORDERED that Defendant's objections to requests for production 63, 64 and 65 are overruled. **Defendant shall, by December 4, 2015, produce any and all letters, emails, complaints, telephonic messages, or documents in any form from any passenger alleging failures to treat, diagnose and/or evacuate as to all of Defendant's vessels during the three years preceding and the one year following August 28, 2013.** DONE AND ORDERED in Chambers, in Miami, Florida, November 20, 2015.

Yet, as the Court knew and should have known from the May 9, 2017 Hearing and from Plaintiff's subsequent Pro se motion to open Discovery pre-trial, Plaintiff never obtained these important items from her own attorney. See, also, attached Declaration of Plaintiff.

Yet, while the Trial Court barely was affording Plaintiff a fair opportunity to be heard on Nov. 6, 2017 to make a proper Record for her Continuance, prior Court proceedings with Judge Goodman are filled with discussions of Thanksgiving and toys and Christmas and how much money he made as a private lawyer all friendly proceedings while Plaintiff was not present.

See,
2/17/2015   Docket No. 28 TRANSCRIPT of Discovery Hearing held on 11/20/2015 before Magistrate Judge Jonathan Goodman, 1-27 pages, Court Reporter: Carl Schanzleh, 305-523-5635.

AND, NUMBER TWO, AND AT THE TIME I WAS WORKING FOR THE 18 ACKERMAN FIRM. I SAID NUMBER TWO, THIS ISN'T REALLY MY MONEY. 19 THE MONEY DOESN'T GET PAID TO ME, JONATHAN GOODMAN, IT GETS 20 PAID TO THE LAW FIRM. AND THEN AT THE END OF THE YEAR SOME 21 VERY, VERY SMALL PERCENTAGE WILL TICKLE DOWN TO ME. I SAID, 22 I'M ONE OF, YOU KNOW, 220 PARTNERS IN THE FIRM, I MEAN, SO MY 23 PORTION OF THAT IS A DOLLAR FIFTY OR SOMETHING. 24 SO THEY HAD AN INTERESTING LESSON ABOUT LAW FIRM 25 FINANCIAL FACTORS.

MR. DRAHOS: IF IT'S ANY CONSOLATION, YOUR HONOR, I'M 3 STILL EXPLAINING THAT TO MY WIFE. 4 THE COURT: WELL, AMEN TO THAT. I THINK I UNDERSTAND. 5 ALL RIGHT. SO -- OH, BY THE WAY,

JACKSON, LET ME ASK 6 YOU A QUESTION. 7 WHAT IS YOUR FAVORITE SPORT. NOT TO WATCH BUT TO 8 PLAY? WHAT'S YOUR FAVORITE SPORT TO PLAY? 9 MR. JACKSON RINALDI: FOOTBALL. 10 THE COURT: YEAH? WHAT POSITION DO YOU PLAY? 11 MR. JACKSON RINALDI: RUSH.

MR. RINALDI: WE REFERRED THE WHOLE CASE TO YOUR 15 HONOR. 16 THE COURT: OH, MY GOSH. I SEE THAT. ALL RIGHT. 17 YOU KNOW WHAT? THEN ABSOLUTELY. 18 BUT YOU WILL BE ABLE TO BRING YOUR CHILDREN TOO. 19 MR. DRAHOS: I WILL DEFINITELY BRING MY GIRLS TO THAT 20 ONE. 21 THE COURT: I THINK THERE ARE SOME COMPANIES THAT WILL 22 RENT YOU CHILDREN FOR PURPOSES OF THE HEARING ONLY. 23 INTERESTING. ALL RIGHT. 24 ANYTHING ELSE THAT I CAN HELP YOU FOLKS RESOLVE?

Rest of Transcript - Green Beans, Toy guns, Thanksgiving, What to ask for from Santa etc

Docket No. 37 - 6.17.16 NOTICE OF DISCOVERY HEARING

ROYAL CARIBBEAN CRUISES LTD.'s Rule 30(b)(6) **witness' refusal to answer certain questions posed.** See Deposition Transcript of Dr. Benjamin Marc Shore at 29:15-30:23; 114:3-115:21 and 123:21-124:9.

2. ROYAL CARIBBEAN CRUISES LTD.'s Rule 30(b)(6) **witness' failure to be prepared to answer questions with respect to Plaintiff's Designation Matters** Number 2 (67:22-68:7 and 72:19-25); Number 3 (56:5-57:2); Number 8 (128:1-4); Number 17 (161:4-162:7); Number 21 (175:11-176:7 and 177:4-7); Number 29 (211:3-216:5 and 218:18-220:12) and Number 30 (201:12-209:23)

** Responses filed by Plaintiffs opposing Defendants etc See Docket

July 8, 2016, was the date when Plaintiffs took the deposition of one of Defendant's experts, Nestor de la Cruz, M.D. Dr. de la Cruz testified at deposition that Decedent died from choking on vomit in the shower on Defendant's ship. This opinion was not only conspicuously absent from his expert report,1 but it was contrary to the conclusions of two medical examiners2 who determined that Decedent died from peritonitis.

These failures to treat and monitor claims have been features of this case since the case's inception. **But this new evidence of causes of death, to reiterate things a different way, adds another time frame component and another breach of care act component not heretofore reasonably known.**

The Trial Court made a clear error of fact on Nov. 6, 2017 by claiming anything provided to Plaintiff's attorney was provided to her as prior proceedings showed this was not the case.

Nov. 6, 2017 Page

MR. KNIGHT: Your Honor, Dr. de la Cruz is
15   a bariatric surgeon here at the University of
16   Miami.

THE COURT: Wait. Stop. Stop. Right
24   now, we're talking about Dr. de la Cruz.
25       You're telling me, number one, his expert
Page 16

report was provided to the plaintiff; true or
2   not true?
3       MR. KNIGHT: To former counsel, correct.
4       THE COURT: **Listen, I don't need -- that's**
5   **it. True?**
6       MR. KNIGHT: True.
7       **THE COURT: Whatever you gave to former**
8   **counsel, I'm construing as you gave to the**
9   **plaintiff.**
10      **So you've given the expert report of**
11   **Dr. de la Cruz to the plaintiff; true?**

No, I have not received any written

12 anything from them.  No e-mail, nothing.  The last communication
13 I had was that they were going to speak -- they were going to
14 write Mr. Brill a letter asking him to release a copy of my file
15 and then I received -- that was going to be by the 9th.  They
16 told me I would see something by May 9th, which is today, and I
17 received an e-mail from Mr. Brill with -- like he said, with a
18 list of the experts but not with anything -- there's no anything
19 to my file.  So I don't even know the legality of that.
20 I mean, I don't know -- an attorney that withdraws from
21 a case, according to the research I've done, he is entitled to
22 the file, but also he can't do anything that's detrimental to my
23 case moving forward, and he seems to be doing everything
24 detrimental to my case.  I mean, it's obvious if I have to go
25 through a list and call them, I don't even know if Mr. Brill has

9

1 spoken to them asking them not to release things to me.  And
2 then we come to the issue that if I call the experts and have to
3 obtain information from them or have to pay them for
4 information, this is something that can be argued in court for
5 the charging lien because then why would I need to pay him any
6 money that I owe him?  I would have had representation had he
7 not put the charging lien on me.
8 So, you know, he has the charging lien and he's holding
9 the file, which seems kind of unprofessional at this point.  And
10 I know the law is the law, but in looking at the law that
11 governs the charging lien, there's a lot of issues to be argued
12 here and you know, if we're talking about moving forward to a
13 trial, when I have to call -- you know, go through all these
14 experts and call and get copies of everything, there's two
15 reasonings there.  Like one, if I had to do that, then why would
16 I owe David Brill money for that if he's already done that.  How
17 can I do it again and then still owe him money for doing that.
18 And then the second thing would be is it would be so
19 time-consuming, I don't think it would probably even get done.
20 I don't know how soon it could get done for a trial

The Trial Court had compounded all of this in earlier proceedings by making a clear error of law by Falsely misleading Plaintiff pro se that he could not do anything about her not having her file from her own attorney when in fact the law of Liens in Florida are determined by the Courts on case by case basis and not the Florida bar.

Judge Goodman:

Page 12
 **So it's not my place here to get involved in a business
24 dispute or internal dispute between the remaining three
25 Plaintiffs who are proceeding pro se and their former lawyers.**

**Page 13
And you're also right, that the
 6 former lawyers are permitted generally to retain the files, but
 7 they cannot do so in a way that would prejudice your position.
 8 So I don't know what information you provided to the Florida Bar
 9 when you complained, I don't know if you told them about the
10 charging lien or the retaining lien, but you need to work
11 through those issues**

Florida common law defines a charging lien as a mechanism by which an attorney may enforce her equitable right to have costs and fees owed for legal services secured by the judgment or recovery in a lawsuit. See Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla.1983); Flynn v. Sarasota County Pub. Hosp. Bd., 169 F.

Supp. 2d 1363, 1368 (M.D. Fla. 2001). "No statutes outline the requirements for valid attorney's liens in Florida. Rather case law acts as the sole guide for both attorneys and courts as to these liens." Daniel Mones, P.A. v. Smith, Inc., 486 So. 2d 559, 561 (Fla. 1986). All proceedings in Florida to resolve an attorney's charging lien for legal services are equitable in nature. See Nichols v. Kroelinger, 46 So. 2d 722 (Fla.1950). Judge Goodman had to know he had the power to entertain Plaintiff's oral motion to get her file from her attorney under proper circumstances but lead her to believe the Court could do nothing and only the Florida Bar could help.

The Court did not consider the Trial calendar or severe prejudice to Plaintiff in dismissing with prejudice when a continuance should be granted.

WHEREFORE, Plaintiff respectfully prays for an Order granting the relief requested under Rule 59 above and for such other and further relief as may be just and proper.

*Marla Martins*

Marla Martins, Plaintiff Pro Se
7687 Forestay Dr.
Lake Worth, Florida 33467

908.296.0202<br>
marlamartins@mail.com

# CERTIFICATE OF SERVICE

I hereby certify that on December 6th, 2017 the foregoing document was manually filed with the Clerk of the Court by Marla Martins. l also certify that the foregoing document is being served this day on all counsel of record on the attached service list by email and regular mail.

**SERVICE LIST**

Fowler White Bumett, P.A.
Espirito Santo Plaza, Fourteenth Floor
1395 Brickell Avenue
Miami , Florida 33131
Tele: 305.789.9200
Fax: 305.789.9201
Email : Michael J. Drahos   mdrahosl@fowler-white.com
Christopher Edson Knight   cknight@fowler-white.com
Mark J. Schleier           mjs@fowler-white.com