CASE NO. 15-21124-CIV-GOODMAN
[CONSENT]

MARLA MARTINS, et al.,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

## ORDER ON PLAINTIFF'S MOTION
## TO ALTER AND AMEND JUDGMENT

Plaintiff Marla Martins filed a motion to alter and amend the final judgment in this case under Federal Rule of Civil Procedure 59. [ECF No. 187]. Defendant Royal Caribbean Cruises, LTD. ("RCCL") filed a response [ECF No. 196], and the Court permitted Ms. Martins to file a reply, which she did. [ECF Nos. 200; 208]. The Court **grants in part** and **denies in part** the motion. The Court is **not** vacating the order denying Ms. Martins' motion to continue the trial and is not rescinding the dismissal. However, the Court *is* amending the dismissal to be without prejudice and is vacating the judgment that was based on a with-prejudice dismissal.

Proceeding *pro se*, Ms. Martins raises myriad allegations in her motion, supporting affidavit, and reply. At bottom, Ms. Martins attempts to excuse her refusal to proceed with the previously-scheduled trial by blaming her former attorneys of

failing to provide her with discovery and case files and the alleged existence of a surprise defense expert witness. Although Ms. Martins did not seek a trial continuance until the morning of trial, she argues that the Court was already aware (from comments made at earlier hearings) of her difficulty in obtaining deposition transcripts and other materials from her former attorneys. Apparently, Ms. Martins is implicitly contending that the Court should have somehow intuited her unstated desire for a trial continuance months before the trial.

Because Ms. Martins says that her former attorneys are to blame for her refusal to proceed with trial and the consequential with-prejudice dismissal entered against her, the Court required her former attorneys to submit affidavits and materials concerning Ms. Martins' diligence (or lack of diligence), the information she knew (or should have known about), and the communications she had with them. [ECF No. 209]. The attorneys submitted the required affidavits and materials. [ECF Nos. 212-215].

As explained in further detail below, Ms. Martins requested her file only once, in April 2017, and did not ever make a specific request for deposition copies before November 27, 2017 -- three weeks after she appeared for the scheduled trial (more than an hour and a half late) and refused to proceed as plaintiff after the Court denied her motion for continuance. In addition, several of her allegations are demonstrably false, such as her claim that she never heard of RCCL's expert witness until shortly before trial. An excerpt from the expert's deposition transcript was filed on the CM/ECF public

record almost a year and a half before the special set trial date, and the docket description specifically lists his name.

In her motion to alter and amend the final judgment, Ms. Martins emphasizes her contention that she actually filed a written motion for a continuance the morning of the scheduled trial and did not rely solely on an *ore tenus* request for a trial continuance. The official CM/ECF court record belies her claim, as it shows that the motion was filed at 11:51 a.m. [ECF No. 178], more than half an hour after the trial was cancelled (with the potential jurors waiting outside the courtroom) and after the Court granted RCCL's motion to dismiss at the trial. [ECF. No. 186]. But the distinction between a written motion for a continuance and an oral one is legally irrelevant here. The motion (or motions) were filed on the morning of a special set November 6, 2017 trial that had been scheduled on May 9, 2017. [ECF No. 137].

Regardless of whether Ms. Martins filed a written motion, made an *ore tenus* application for a continuance, or did both, she refused to proceed with the trial because she claimed that she was ambushed by the news that Defendant would be using a specific expert witness. But the evidence establishes that (1) the expert, Dr. de la Cruz, was first identified in August 2015, (2) Dr. de la Cruz's expert report was served in June 2016, (3) Ms. Martins' counsel took Dr. de la Cruz's deposition in July 2016, (4) Ms. Martins identified excerpts of his deposition on her exhibit list, and (5) an excerpt from his deposition was filed on CM/ECF (and is available to Ms. Martins -- and anyone else,

for that matter) almost a year and a half earlier. [ECF No. 49-1]. Moreover, Ms. Martins did not explain why she could not have proceeded with trial anyway and preserved any objections about Dr. de la Cruz.

Pursuing a medical malpractice claim is surely a daunting task for a *pro se* litigant. But the Court explained the burdens of being a *pro se* plaintiff to Ms. Martins after she successfully opposed RCCL's motion to enforce a $500,000 settlement agreement. [ECF No. 96]. Ms. Martins did not file a motion asking this Court to appoint counsel from the Volunteer Lawyers program in this district after RCCL's motion to enforce the settlement was denied.[1] Instead, Ms. Martins decided to ignore her counsel's advice and recommendations and opted to represent herself. By that time, the discovery deadline had long since expired.

Ms. Martins had approximately six months to prepare for trial but asked for a trial continuance for the first time on the morning of trial (after participating in a final pretrial conference a few days before the trial).

Given this background, the Undersigned concludes that Ms. Martins has failed to establish legally sufficient grounds to justify all of the Rule 59 relief she seeks. She has not identified any newly discovered evidence and has not demonstrated a manifest

---

[1] Ms. Martins *was* represented by counsel in connection with the motion to enforce settlement agreement, including the evidentiary hearing and post-hearing briefing. That attorney's involvement in this case ended with the order denying the motion to enforce the settlement agreement.

error of law or fact to cause me to rescind the order denying her last-minute request for a trial continuance or to vacate the dismissal.

**On the other hand**, Ms. Martins has not engaged in a pattern of delay or abuse, and, upon further reflection, the Court deems it inappropriate to designate the dismissal as one with prejudice, which is an extreme sanction for refusing to proceed at trial as a *pro se* plaintiff who did not obtain her entire file from her former counsel.

So Ms. Martins has established grounds for *some* of the relief she seeks.

Therefore, the Undersigned **grants in part and denies in part** the motion to alter or amend. Specifically, the order denying the continuance and the order dismissing the case remain. The dismissal, however, is amended to be *without* prejudice -- which means that the judgment against her (and in RCCL's favor) will be vacated and that she may refile the lawsuit (albeit not with any new counts and not with the counts for which the Court previously entered summary judgment in RCCL's favor).

Factual and Procedural Background

This lawsuit arose from the death of Briana Martins ("Briana"), a seventeen-year old resident of New Jersey, aboard the vessel *Explorer of the Seas*, operated by RCCL in August of 2013. [ECF No. 1]. Plaintiffs[2] alleged that Briana's death was caused by the

---

[2]     Marla Martins (Briana's mother), individually ("Marla" or "Ms. Martins") and as *administrator ad prosequendum* ("Administrator") for the Estate of Briana; decedent; Marcelo Costa ("Costa"); G.E., a minor, by and through her grandmother, legal and natural guardian, and next friend, Marla Martins; and Tatiana Martins ("Tatiana") (collectively, "Plaintiffs").

ingestion of bacteria-ridden food aboard the *Explorer of the Seas*, that the shipboard medical staff negligently treated Briana's illness, and that, individually, Marla, Costa, G.E. and Tatiana suffered extreme emotional distress because of RCCL's negligence. [ECF No. 1]. Plaintiffs contend that the ship's doctors and nurses, acting as RCCL's employees or as its actual or apparent agents, negligently failed to properly diagnose and treat Briana's condition and failed to arrange for medical disembarkation in Haiti.

RCCL denied those claims and contended that Briana passed away from other causes. [ECF Nos. 169; 171]. One of RCCL's experts noted that Briana had a gastric bypass in September 2012, and visited a hospital emergency department complaining of abdominal pain in June 2013. [ECF No. 62]. She had an ear infection the week before the ship left on August 22, 2013, and was given azithromycin. That expert, a University of South Florida professor with an expertise in microbiology, opined that (1) Briana's symptoms and death were not caused by *Salmonella* food poisoning as a result of eating goat cheese pizza, (2) her symptoms and death were not caused by *Salmonella* contracted on RCCL's ship, and (3) there may have been other possible causes for her symptoms and death.

Plaintiffs filed a seven-count complaint alleging wrongful death under the Death on the High Seas Act ("DOHSA") (Count I); alternative wrongful death under DOHSA based upon apparent agency (Count II); negligent hiring, retention, and training (Count

III); and negligent infliction of emotional distress ("NIED") for Marla, Costa, G.E., and Tatiana (Counts IV-VII). [ECF No. 1].

Earlier in this case, the Undersigned ruled on RCCL's motion to dismiss, **granting it in small part** and **denying it in large part**. [ECF No. 30]. I dismissed Count III, alleging that RCCL's negligent hiring, retention, and training of shipboard medical staff caused Briana's death. RCCL then moved for summary judgment on all six remaining counts. The Undersigned **granted in large part and denied in small part** RCCL's summary judgment motion. [ECF No. 90]. That ruling permitted Ms. Martins to proceed to trial on Counts I and II, but the Court granted summary judgment for RCCL on all other claims for all Plaintiffs.

Before the Court ruled on RCCL's summary judgment motion, I held a telephone hearing on September 15, 2016. [ECF No. 86]. The order scheduling the hearing [ECF No. 85] noted that it was being scheduled to discuss, among other issues, the impact that a proposed Amended Complaint would have on the current trial schedule (i.e., a special set trial scheduled to begin on October 24, 2016 [ECF No. 22]) and on RCCL's summary judgment motion.

During the September 15, 2016 hearing, counsel explained that the parties were "pleased to report" that they had settled the case. [ECF No. 124, p. 5]. Plaintiffs' counsel explained that the settlement agreement "fundamentally calls for the parties to refrain from trying this case" because they would "instead put the faith in our Honor's ruling

on the defendant's motion for summary judgment, which would necessarily need to include a decision on the NIED[3] issue act as the verdict [sic] in the case." [ECF No. 124, p. 5].

After advising the Undersigned about the settlement, counsel asked the Court to rule on the summary judgment motion, "including a decision on the NIED issue." [ECF No. 124, p. 6]. They also asked me to stay, or abate, a ruling on the motion to amend the complaint because it was not necessary for the anticipated ruling on the summary judgment motion. Similarly, they asked me to remove the case from the trial calendar. [ECF No. 124, p. 15].

The parties expressed their preference to not advise the Court about the details of the settlement because they wanted me to "know as little about that as possible" because they wanted me to "have no preconceived ideas" and wanted a ruling on the summary judgment motion "based on the facts and the law, without any idea of what the settlement would entail." [ECF No. 124, p. 16].

The Court granted the parties' request and removed the case from the October 24, 2016 special set calendar, stayed the motion to amend the Complaint, and stayed any pending *Daubert* motions. [ECF No. 87]. I also announced my intent to rule on the summary judgment motion. [ECF No. 87]. That summary judgment ruling was issued on November 3, 2016. [ECF No. 90].

---

[3]     "NIED" refers to the negligent infliction of emotional distress claim.

Almost a month later, on November 29, 2016, Plaintiffs' counsel filed a "motion for court guidance," explaining that Ms. Martins, on behalf of herself and her minor child and with the consent of co-Plaintiffs Marcelo Costa (her husband) and Tatiana Martins (another daughter), had agreed to settle the case on a "high-low settlement offer based on how [the] Court ruled on a specific issue" in the summary judgment motion. [ECF No. 91, pp. 1-2]. The motion advised that the summary judgment ruling meant that Plaintiffs are entitled to the low amount of the high-low settlement agreement. [ECF No. 91, p. 2]. The motion noted that Plaintiffs were refusing to execute a release and refusing to sign the closing statement. [ECF No. 91, p. 3].

The motion asked the Court to authorize counsel to execute the release on Plaintiffs' behalf and to allocate the settlement funds as outlined in the Closing Statement. [ECF No. 91, p. 4]. The motion noted that RCCL did not object to the requested relief. [ECF No. 91, p. 4].

Ms. Martins and the other plaintiffs did not agree, however. Instead, Ms. Martins filed a notice of appeal of the summary judgment order. [ECF No. 94]. She also filed a "declaration statement" (signed under penalty of perjury) opposing the motion for guidance. [ECF No. 98]. In the declaration, Ms. Martins took the position that she was unfairly pressured into going along with the settlement offer during an unexpected weekend telephone call that lasted less than half an hour. She said that she sent an email to her attorney less than two days later, saying that she "did not and would not agree,

and would not sign anything." [ECF No. 98, p. 2]. Her declaration also noted that the terms of the settlement agreement were never put in a writing sent to her.

Meanwhile, RCCL filed its own motion to enforce settlement agreement and for sanctions against Ms. Martins on the same day as she filed her declaration. [ECF No. 96]. The next day, Plaintiffs' counsel filed a motion to withdraw because of the irreconcilable differences that made it ethically necessary to withdraw. [ECF No. 101]. The Court granted the motion the next day. [ECF No. 102].

Ms. Martins then filed a memorandum of law in opposition to RCCL's motion to enforce settlement agreement and a separate memorandum opposing her former counsel's motion for court guidance. [ECF Nos. 104-05]. Her former counsel then filed a reply, noting his view that an evidentiary hearing was required. [ECF No. 110].

The Eleventh Circuit Court of Appeals dismissed Ms. Martins' notice of appeal *sua sponte* for lack of jurisdiction. [ECF No. 113]. The appellate court emphasized that the order on the summary judgment motion was not a final, appealable order because it did not end the litigation on the merits. It flagged the fact that Ms. Martins still had two claims pending and that the district court had not certified the order for immediate review. It also advised that appellants could appeal once the district court enters a final judgment adjudicating the remaining claims left in the case.

The Court held a four-hour evidentiary hearing on January 23, 2017. [ECF No. 119]. Ms. Martins and other Plaintiffs were represented by counsel at the hearing,

though counsel's notice of appearance was a limited one that explained that he would not be representing any Plaintiffs if the underlying case were to proceed. His involvement was limited to the related issues of "whether there is a settlement agreement and/or its enforceability." [ECF No. 118, p. 1].

During the hearing, one of Plaintiffs' former attorneys introduced an email that Ms. Martins wrote to her attorney before the purported settlement was reached in which she said, "I have fought many things in my life and have found loopholes in every law I have fought." [ECF No. 122, p. 36]. Ms. Martins conceded that she had been involved in "several" other personal injury lawsuits as a plaintiff, several landlord-tenant disputes, several foreclosure actions, several loan defaults, and "two or three bankruptcies." [ECF No. 122, p. 44-45].

After the evidentiary hearing, the Court ordered the parties to file memoranda and also required the parties to mediate. [ECF No. 121]. The parties attended a mediation on February 2, 2017 but did not resolve the dispute over the existence and/or enforceability of the settlement agreement. [ECF No. 127]. In a post-hearing memorandum, Ms. Martins' former counsel advised the Court of their view of Ms. Martins' actual motive: "She wants more money than the $500,000 mandated by the high-low agreement; she wants the high of the $1,000,000.00 instead." [ECF No. 128, p. 8]. Her former attorneys also noted that "no one has been able to persuade Ms. Martins after the fact of the Plaintiffs' loss on the NIED claims in summary judgment to relent in

her charade and recognize the settlement is in the Plaintiffs' best interests." [ECF No. 128, p. 8].

Her former attorneys' memorandum also argued that Ms. Martins' "efforts to undo this settlement is plainly in the worst interest of G.E.," a minor. [ECF No. 128, p. 31]. Counsel continued to argue that

> [t]he only other way to any recovery for the minor child G.E. thereafter, would be that Ms. Martins successfully appeals the summary judgment in a way that allows the entire case, including negligent infliction of emotional distress counts, to proceed, an extremely unlikely proposition. She would need to hire a lawyer to bring and win that appeal, then hire another lawyer to prosecute all of the Plaintiffs' cases to trial. That trial lawyer would have to present evidence sufficient to avoid directed verdict; then convince a jury of all of the factual issues in dispute; receive a substantial verdict from that jury which allocates damages to the minor child for emotional distress (when presently there is, this Court has found, insufficient evidence of that minor child's physical manifestations of emotional distress); and then withstand post-trial motions. Then, Ms. Martins would have to hire appellate counsel to prevail on a certain appeal of that verdict. At bottom, receiving nothing cannot possibly be in the best interest of this minor child.

[ECF No. 128, p. 31].

Invoking the "be careful what you wish for" maxim concerning Ms. Martins' strident position that the purported settlement should not be upheld, the Court entered an order denying RCCL's motion to enforce the settlement agreement. [ECF No. 131]. The Order compared the consequences of a settlement to a scenario where Ms. Martins' "no settlement" position would be ratified:

> If Ms. Martins and the other Plaintiffs were to go forward with the settlement which Royal Caribbean believed had been accepted, then

Defendant would pay $500,000. [ECF No. 128, p. 8]. But if there is no settlement, then the case will be subject to the Court's earlier-issued Order on Defendant's Summary Judgment Motion. That Order largely granted summary judgment for Royal Caribbean but permitted Ms. Martins to proceed (only) on Counts I (wrongful death under the Death on the High Seas Act, also known as DOHSA) and II (alternative wrongful death under DOHSA based upon apparent agency). But DOHSA limits recovery to the pecuniary loss sustained by the individuals for whose benefit the action is brought. Therefore, **DOHSA bars recovery for non-pecuniary damages**, such as pain and suffering, mental anguish and loss of society. The amount of permissible damages available to Ms. Martins under DOHSA is **extremely limited** and may well be significantly less than the $500,000 settlement which Royal Caribbean is seeking to enforce. (emphasis supplied).

[ECF No. 131, p. 4].

The Order also mentioned that Plaintiffs' former counsel submitted a memorandum in which they estimated the trial recovery on the counts remaining for trial to be no more than $10,000. [ECF No. 131, p. 5 n. 2]. It also noted that counsel sent a written message confirming the wisdom of the settlement offer after the Court ruled on the summary judgment motion. [ECF No. 131, p. 5 n. 2].

Two days after the Undersigned entered the order denying the motion to enforce settlement agreement, Plaintiffs' former attorney filed a formal notice of a charging lien (for fees and costs against a future recovery), noting that they are owed compensation for both legal services and costs expended. [ECF No. 133].

Ms. Martins then filed a letter advising that she would be, "for the time being," proceeding on a *pro se* basis. [ECF No. 134]. She did not ask the Court to appoint counsel for her.

The Court held a telephone hearing on May 9, 2017 to schedule the case for trial and to discuss other trial-related issues. [ECF No. 136]. Marla, Costa, and Tatiana all participated in that telephone hearing. The Undersigned noted then that the only claims that would go to trial were Ms. Martins' claims under DOHSA, which are limited to compensation for pecuniary loss, and explained that nonpecuniary damages for pain and suffering, mental anguish, and similar theories are not recoverable.

The Court asked Ms. Martins when during the year would be better or worse for a three-to-four day jury trial. Ms. Martins said that she would need "some kind of postponement" because her former attorneys placed a charging lien on the file, she could not obtain another attorney, and her former lawyers refused to release the file. [ECF No. 184, p. 5]. One of her former attorneys also participated in the telephone hearing. He explained that Ms. Martins contacted the Florida Bar and asked for help in obtaining the file because she did not appreciate the consequences of the charging lien. He advised that the firm had communicated with the Bar, who has "agreed that what we have done is appropriate." [ECF No. 184, p. 7]. He explained that the charging lien concerns "a vast amount of costs" that the firm advanced and in terms of turning over the files, he represented that his firm provided Ms. Martins with "everything we [could] that would not prejudice her in pursuit of the case." [ECF No. 184, p. 7].

Counsel explained that the firm provided Ms. Martins with a list of all the experts, along with their contact information. He also noted that Ms. Martins could also

obtain the transcripts from another source: the court reporters themselves. [ECF No. 184, p. 8].

The Undersigned explained to Ms. Martins the difference between a retaining lien and a charging lien, pointed out that the attorneys are generally permitted to retain files but could not do so in a way that would prejudice their former clients' legal position. The Court pointed out that it did not know whether Ms. Martins told the Florida Bar about the charging lien or retaining lien, but urged her to "work through those issues." [ECF No. 184, p. 12].

Without providing any legal advice to Ms. Martins, the Court made several observations to her about the upcoming trial to "bring home to [her] the very real reality [of what she is] going to be confronted with over the next few months representing [herself] at this trial":

1.      Even if she received the file from her former attorneys, she would need to have expert witnesses to establish liability at trial.

2.      Expert witnesses do not appear at trial without being compensated.

3.      Expert witnesses typically charge a minimum daily appearance fee for trial.

4.      Even if she had her complete file, Ms. Martins would still on her own need to make financial arrangements because she would need "significant money" in the "thousands of dollars" to pay the experts.

5. If Ms. Martins did not have the money to arrange for trial testimony from experts, then she would need to go forward at trial without experts because that is "just the reality of representing yourself *pro se*."

6. If she were still represented by counsel, her lawyers would likely advance the costs for expert fees. But because Ms. Martins is proceeding on a *pro se* basis, she would "need to make [her] own arrangements for the file, for getting witnesses to the trial, for paying experts if they require a payment."

7. Proceeding on a *pro se* basis is a "difficult situation."

8. As the judge, the Undersigned is an umpire who calls balls and strikes, not a coach who can give strategy or help.

9. Ms. Martins would need to be familiar with the Rules of Civil Procedure and the Rules of Evidence, and would also be required to "do all of the steps that litigants are required to do in connection with a trial."

10. The Court provided illustrations of those steps: filing a pretrial stipulation, listing witnesses and exhibits, and preparing proposed jury instructions.

11. At bottom, the Undersigned noted that Ms. Martins was "going to have to do all the things that lawyers do except you're going to have to do it on your own." [ECF No. 184, pp. 12-14].

After making these observations, the Court announced its intent to schedule the case for trial. I began by noting that "I'm obviously going to give you some amount of

time, not just to get the file, but to review it and get ready." [ECF No. 184, p. 14]. The Undersigned asked Ms. Martins if she had "any particular problems" with a trial taking place on November 6-9 of 2017, and Ms. Martins said, "**No, that's fine**." [ECF No. 184, pp. 15-16 (emphasis added)].

Later that same day (i.e., May 9, 2017), the Undersigned issued a revised trial scheduling Order for a November 6, 2017 special set jury trial. It also included the other standard trial-related events and deadlines, such as the timing of the pretrial conference, the due dates for the pretrial stipulation, and proposed jury instructions.

The Trial Scheduling Order also discussed the procedures for a motion for a continuance. It provided as follows: "[U]nless an emergency situation arises, a motion for continuance will **not be considered** unless it is filed **at least 20 days prior** to the date on which the trial is scheduled to commence." [ECF No. 137, pp. 3-4 (emphasis supplied)].

Three months later, on August 10, 2017, Ms. Martins filed a motion for leave to conduct discovery. [ECF No. 138]. In that motion, she said that her former attorney would not forward her file to her but then explained that she had obtained a copy of all her legal documents in her case file on June 16, 2017. The motion did not expressly disclose this, but many of the depositions taken in the case (of doctors, plaintiffs, nurses, and experts) had already been filed in the public record by both RCCL and Plaintiffs' former attorneys. [*See*, *e.g.*, ECF Nos. 54-62; 64; 68-69].

Ms. Martins' motion announced her desire to take additional discovery about Dr. Hamilton and to take another deposition of him. She asked for additional discovery about Dr. Hamilton, the physician who treated her daughter Briana on the ship because her "careful extensive review" of the file caused her to conclude that the deposition her former attorney took of Dr. Hamilton was "grossly deficient." [ECF No. 138, p. 2]. She opined that she was "not sure if this was done intentionally or unintentionally." [ECF No. 138, p. 2]. She further alleged that she conducted her own further investigation into Dr. Hamilton and that "no verification or history can be verified as to him ever practicing anywhere as a Doctor." [ECF No. 138, p. 3].

Based on that and her claim that she could not verify that Dr. Hamilton maintained all his continuing education requirements, Ms. Martins alleged that she has "reason to believe that Dr. Dean Hamilton is or was not lawfully engaged or licensed to serve as a Physician" on RCCL's ship. [ECF No. 138, p. 4]. She similarly alleged her belief that RCCL's contract with Dr. Hamilton is "fraudulent." [ECF No. 138, p. 5]. Ms. Martins asked to propound a set of 30 interrogatories to RCCL and Dr. Hamilton, a non-party, 23 requests for production upon RCCL and Dr. Hamilton, and to take a second deposition of Dr. Hamilton.

Ms. Martins' motion **did not seek to continue the trial**. In fact, it expressly noted that it was "**not** intended to harass or **extend the trial date**." [ECF No. 138, p. 7 (emphasis supplied)].

RCCL filed an opposition response. [ECF No. 139]. It noted that the discovery deadline was July 26, 2016, more than a year before Ms. Martins filed her motion. It noted that the Undersigned's most-recent trial order highlighted that <u>expired deadlines would not be extended</u>. RCCL argued that Ms. Martins' mere dissatisfaction with her prior attorney's performance does not justify additional discovery. It also contended that additional discovery would likely interfere with the November 6, 2017 trial date. And it took the position that some of her proposed additional discovery would not be proper even if it had been sought before the discovery cut-off expired. For example, RCCL argued that Ms. Martins had not established good cause to take a second deposition[4] of Dr. Hamilton and that some of the discovery requests were misdirected to non-parties.

The Undersigned denied Ms. Martins' motion for several reasons: the expiration of the discovery deadline, her former counsel's involvement in extensive discovery, the lack of good cause for seeking post-deadline additional discovery, the interference with the upcoming trial date, and the procedural impropriety of some of the proposed discovery requests. [ECF No. 140].

Almost two months later, on October 16, 2016, Ms. Martins filed another submission that **did not seek to continue the trial** but that instead recognized her intent to participate in the scheduled trial. Specifically, Ms. Martins requested leave to use a

---

[4]     RCCL filed the entire transcript of the deposition that Plaintiffs' counsel took of Dr. Hamilton on January 14, 2016, in Seattle. [ECF No. 57].

flip board at the trial. [ECF No. 141]. She also asked other questions about the trial procedure, such as whether the jurors would be permitted notepads to take notes and, if so, then who would provide them. The Court scheduled a telephone hearing for October 23, 2017, "in light of Ms. Martins' letter." [ECF No. 143].

Before that October 23, 2017 telephone hearing, however, Ms. Martins filed other submissions in which she again reflected her intent to go to trial -- i.e., steps **fundamentally inconsistent with seeking a trial continuance**. Specifically, Ms. Martins filed seven separate submissions concerning her designations of myriad deposition transcripts (including excerpts from Dr. Hamilton's deposition, as well as the five other physicians and a nurse). [ECF Nos. 144-150].

The Court held a hearing lasting more than thirty minutes on October 23, 2017. [ECF No. 152].

Later that day, RCCL filed a certificate of non-agreement on the terms of the joint pretrial stipulation. [ECF No. 154]. That notice advised that the parties had exchanged witness lists, exhibit lists, and objections to the exhibit lists -- but could not agree on the language of the required stipulation. Moreover, it attached Ms. Martins' witness and exhibit list, her objections to RCCL's exhibits, Ms. Martins' draft Joint Pretrial Stipulation, and email exchanges with Ms. Martins.

The October 23, 2017 notice said **nothing about Ms. Martins wanting to continue the trial** but it attached documents reflecting Ms. Martins' efforts to *proceed* to trial, as scheduled.

On October 30, 2017, the parties *jointly* filed proposed jury instructions and verdict forms. **Ms. Martins did not request a trial continuance then either.** [ECF Nos. 158-59].

Later the same day, Ms. Martins filed her opposition to RCCL's motion in limine concerning evidence and theories that might be presented at trial. [ECF No. 162]. The memorandum **did not mention or suggest that Ms. Martins wanted a trial continuance**. To the contrary, it demonstrated the steps she was taking to *get ready* for trial.

Ms. Martins participated in a final pretrial hearing on November 2, 2017. The hearing lasted one hour and 15 minutes. [ECF No. 166]. The Undersigned explained to Ms. Martins the difference between a for-cause challenge and a peremptory challenge to a prospective juror, and she confirmed her understanding of the distinction. [ECF No. 185, pp. 6-8].

Ms. Martins **never mentioned or even hinted about a need or desire to continue the trial** during the pretrial conference. To the contrary, she made several statements that clearly reflected her intent <u>to go to trial</u> the following week:

1.      She agreed to "just delete" certain unnamed witnesses from her witness list. [ECF No. 185, p. 4].

2.      She asked for clarification on the order entered earlier in the day on the motion in limine, and the Undersigned provided it. [ECF No. 185, pp. 10-14].

3.      Specifically, Ms. Martins wanted to confirm her ability at trial to address the training of the on-board doctor who treated her daughter so that she could show the jury that he never received any training on Salmonella poisoning or food-borne illness. The Undersigned ruled against RCCL's position on this point and concluded that Ms. Martins would be able to introduce evidence about the doctor's "training or lack of training" because "it may relate somehow to the issue of whether or not that healthcare provider breached the applicable standard of care." [ECF No. 185, pp. 10-14].

4.      After providing the clarification requested by Ms. Martins, the Undersigned asked her, "anything else on your mind, Ms. Martins?" And she said, "Not at this moment, Your Honor." [ECF No. 185, p. 14].

5.      The Court explained its "no backstriking" rule for jury selection, and Ms. Martins said she understood it. [ECF No. 185, pp. 17-18].

6.      She would be reading in deposition testimony, as opposed to playing some or all of the videotaped depositions, because she does "not have access to the videos." [ECF No. 185, p. 19]. [Presumably, this comment refers to the charging/retaining lien asserted by her former counsel, as opposed to the fact that she

had not on her own obtained the videotaped depositions from the court reporter or videographer].

7. She planned on having another person help her in court, with one person reading the questions and a different person reading the answers. [ECF No. 185, pp. 19-20].

8. She understood the witness sequestration rule. [ECF No. 185, pp. 20-21].

9. She would not agree to the authenticity of all of RCCL's exhibits, which meant that there was no stipulation for use at trial, because she had "problems" with "a few of their documents." [ECF No. 185, pp. 26-27].

10. Ms. Martins articulated her objection to some of the wording in the proposed concise statement of the case (that would be read to the prospective jurors). [ECF No. 185, pp. 33-35].

11. Ms. Martins advised that she understood the evidentiary rule that she could not "just prevent an expert witness from giving an opinion that [she did not] like." [ECF No. 185, p. 35].

12. She asked for permission to bring electronic equipment into Court for the trial and wanted to know if she needed to file a separate motion to obtain leave. [ECF No. 185, pp. 35-36].

13. Ms. Martins advised that she would not need more than 45 minutes for her opening statement. [ECF No. 185, p. 41].

14.     Ms. Martins said that she understood my rule requiring each side to advise about the witness lineup the day before trial. [ECF No. 185, pp. 41-42].

15.     The Court reminded all participants that I would see them the following "Monday morning, 9:00, as the saying goes, bright-eyed and bushy-tailed." [ECF No. 185, pp. 37-38]. **Ms. Martins did not say or hint that she would not be appearing on time, ready for trial.**

16.     The Undersigned ended the pretrial conference by asking everyone if there was "anything else on anybody's minds about this trial?" And no one, including Ms. Martins, had any further points to discuss. [ECF No. 185, p. 42].

After the pretrial conference, the Court followed up on issues discussed and resolved at the pretrial conference and issued Orders granting Ms. Martins' motion to use a flipboard and allowing her to bring electronic equipment into court for trial. [ECF Nos. 165; 168].

### The November 6, 2017 "Trial"

The Court arranged for the Clerk's Office to summon prospective jurors to the courtroom for jury selection. The parties and their counsel were required to appear in Court by 9:00 a.m. RCCL and its counsel timely appeared. Ms. Martins, however, did not. She appeared in Court at approximately 10:35 a.m. with her husband and co-Plaintiff Costa. She had not contacted chambers or the Clerk's Office to advise that she would be late. [ECF No. 186, p. 3].

After discussing the logistics of how and why Ms. Martins was more than an hour and a half late, the Undersigned asked about the specific terminology she used that morning to describe the role of her husband. The Undersigned was trying to understand who was going to be a witness for purposes of determining who needed to be excluded under the witness sequestration rule, and Ms. Martins earlier in the hearing advised that "he was *supposed to be* a witness." [ECF No. 186, p. 4 (emphasis added)]. She then quickly and briefly noted that she had "filed a motion" [ECF No. 186, p. 4] -- but did not explain what *type* of motion or *when* it was filed. She did not hand up a copy or make further reference to it. She did not then explain that the written motion she supposedly filed was one for a *continuance.*

Ms. Martins did not explain then (or at any other time during the proceeding) why she did not comply with the trial scheduling Order requirement that motions for a continuance be filed at least 20 days before trial and that noncompliant motions would not be considered.

In any event, Ms. Martins then confirmed that her husband **was** going to be a witness, and the Undersigned permitted him to remain in Court until the opening statements began. [ECF No. 186, pp. 7-8]. Ms. Martins and defense counsel for RCCL then both confirmed their receipt of both the list of 30 prospective jurors and the questionnaire that the jurors would answer during jury selection. [ECF No. 186, pp. 8-9].

Ms. Martins then said "I'm **fil*ing*** a motion for continuance" [future tense, as opposed to having done it already] because she believed she was "kind of getting ambushed by the defense." [ECF No. 186, pp. 9-10 (emphasis added)]. Ms. Martins said that RCCL was "filing motions for Nestor de la Cruz,[5] but they didn't give me notice that he was going to be a witness today." [ECF No. 186, p. 10]. She also complained that there was no "Rule 26 hearing" where "they disclosed to me or David Brill[6] -- I didn't see it anywhere on the docket where they disclosed to any -- to either me or them about any of their expert witnesses, their credentials, what they're going to testify about." [ECF No. 186, pp. 10-11].

Concerning Ms. Martins' complaint that she did not "know who was going to be a witness today," the Undersigned explained to her that Plaintiffs proceed first in civil lawsuits and that she is actually the one who would know which witnesses would be appearing when the trial starts. [ECF No. 186, p. 12].

RCCL opposed Ms. Martins' motion for a trial continuance and advised that the experts she mentioned had all been timely disclosed, had all generated reports that were appropriately produced, had all given depositions, and had all been on the defense witness list. [ECF No. 186, p. 14].

---

[5]     Dr. de la Cruz is a physician who is one of RCCL's experts. On November 5, 2017, RCCL filed a motion to permit him to bring a cell phone and iPad into Court on the date he is called as a trial witness. [ECF No. 173]. The Undersigned granted the motion. [ECF No. 175].

[6]     David Brill is one of Ms. Martins' former attorneys.

The Court asked Ms. Martins to pinpoint the specific doctors or experts who she believed she had been ambushed with and she listed Dr. de la Cruz, Dr. Joel Greenson, and Dr. Eric Larson. [ECF No. 186, p. 15]. RCCL advised that Plaintiffs' counsel had taken the deposition of all three experts. [ECF No. 186, pp. 16-18]. The Court would later learn that an excerpt of Dr. de la Cruz's deposition was publicly filed on CM/ECF, at docket entry 49, on July 19, 2016, almost a year and a half earlier.

The Undersigned reminded Ms. Martins about my prior comments about the risks associated with proceeding on a *pro se* basis and denied the motion for continuance. [ECF No. 186, pp. 19-20]. At that point, Ms. Martins said she that could not proceed and was not prepared to proceed. [ECF No. 186, p. 20].

The Court asked Ms. Martins if she wanted to move forward and start the trial, as scheduled, and I gave her the opportunity to consult privately with her husband. [ECF No. 186, p. 22]. The proposed jury panel was coming out of the elevator and heading toward the courtroom. The Undersigned did not want her consulting in the hallway where she might be observed by prospective jurors, so I arranged for Ms. Martins and her husband to speak privately in the empty jury deliberation room. [ECF No. 186, p. 23].

Ms. Martins returned from the jury room after speaking with her husband, but she refused to answer the Court's question about whether she wanted to start the trial. Instead, she indirectly accused RCCL's counsel of making misrepresentations about the

discovery because she said "I have no proof that they sent anything." [ECF No. 186, p. 24]. She also demanded that the Court tell her "where on the docket it's listed that we had our Rule 26 conference or our hearing." [ECF No. 186, pp. 24-26].

Ms. Martins continued to make her complaints and the Court explained that she was being "difficult and uncooperative" and offered her another opportunity to advise whether she wanted to proceed with the scheduled trial. The Court also advised her that it would construe her continued failures to not answer the simple and direct question as a "no." Ms. Martins refused to answer and the Court construed her continued intransigence as meaning that she did not want to proceed with the scheduled trial. [ECF No. 186, pp. 26-27].

The Court then excused the proposed jurors, who were waiting outside, and RCCL moved to dismiss the case with prejudice. [ECF No. 186, p. 28]. Ms. Martins objected, the Court again denied her motion for a continuance, and Ms. Martins said, "Oh, that's fraud." [ECF No. 186, pp. 29-30]. The Undersigned did not follow up on that remark, however.

Shortly after the "trial" ended, the Court entered a written Order (at 11:39 a.m.) granting RCCL's motion to dismiss the case with prejudice. [ECF No. 176]. A few minutes later, at 11:51 a.m., Ms. Martins filed a "motion for reasonable continuance to address last minute eve of trial discovery and witness issues, violations, sanctions against defendants and other relief." [ECF No. 178].

In her written motion, which she signed under penalty of perjury as a declaration, Ms. Martins alleged, "I have **no information on Nestor de la Cruz** and have **never heard of him before**."[7] [ECF No. 178, p. 4 (emphasis added)]. She also alleged, "I have **no idea of his background or training or any appropriate Discovery information** required by the Federal Rules of Civil Procedure nor do I have any knowledge of what the basis of his testimony would be and how he is basing whatever testimony this might be." [ECF No. 178, p. 4 (emphasis added)]. The written motion said nothing about Dr. Greenson or Dr. Larson.

The Court required RCCL to respond to the written motion to continue and specifically required it to list the dates the expert reports were served, the method of service, and the dates of the depositions. [ECF No. 179].

Later the same day (i.e., November 7, 2017), the Court entered an Order excusing Ms. Martins from paying the $1,658.00 juror service costs assessment presumptively required by Local Rule 47.1. [ECF No. 180].

RCCL responded to the written motion for continuance. [ECF No. 181]. It noted the following:

---

[7] This unequivocal declaration, made under penalty of perjury, cannot be harmonized with the fact that CM/ECF shows that a portion of his deposition transcript was in fact filed and is (and was) available to her. The docket entry description for this filing, ECF No. 49, lists, as Attachment 1, Exhibit A, "Excerpt from Transcript of Nestor De La Cruz-Munoz, MD."

1. RCCL first identified Dr. de la Cruz in an August 31, 2015 witness disclosure, served his report on June 13, 2016, and arranged for him to give a deposition on July 8, 2016. RCCL's opposition explains that "Plaintiff was clearly aware of this deposition as she identified excerpts" of it on her exhibit list.

2. RCCL also disclosed to Ms. Martins (directly, as opposed to her former counsel) Dr. de la Cruz as a trial witness on October 23, 2017. [*See* ECF Nos. 154-2; 154-7].

3. RCCL served Dr. Larson's expert report on June 13, 2016, and his deposition was taken on July 20, 2016.

4. RCCL served Dr. Greenson's expert report on July 6, 2016, and his deposition was taken on July 26, 2016.

5. All three experts were included in RCCL's trial witness list, which was provided to Ms. Martins on October 23, 2017.

[ECF No. 181].

By way of summary, RCCL objected to the continuance motion and noted that "there were no 'eve of trial' witness issues and any assertion to the contrary is preposterous and completely lacks evidentiary support." [ECF No. 181, p. 4].

The Court denied the written motion to continue, dismissed the case with prejudice, and entered a final judgment in RCCL's favor. [ECF Nos. 182-83]. The Court

retained jurisdiction to enter an award and amended judgment for attorney's fees and costs.

Ms. Martins then filed the instant motion to amend or correct judgment. [ECF No. 187]. Among other claims, the motion alleged that "because Plaintiff reasonably believes in good faith that some of the conduct of the Trial Court shows bias and prejudice against her as a pro se Plaintiff, Plaintiff further seeks to have Trial Court Judge Goodman recused upon the vacating and opening of the judgment." [ECF No. 187, p. 2]. RCCL's response does not address this one-sentence (out of 19 pages) comment, and Ms. Martins does not mention it again either in her reply.

At bottom, Ms. Martins' motion alleges that the Court's denial of her request for a trial continuance was an abuse of discretion and a manifest error of law. She also alleges that her written motion for a continuance "did not get docketed for several days[.]" [ECF No. 187, p. 2]. In support of the motion, Ms. Martins filed a declaration in which she claims that she manually filed the motion for a continuance before the start of the trial, received a stamped copy from the Clerk, and was told it was filed. [ECF No. 188]. She also alleged that she had several copies in her hand to provide to the Court and to RCCL. Neither the motion nor the declaration explain why she did not provide copies of the written motion at the trial or why the official CM/ECF file shows the motion being uploaded more than an hour after she walked into the courtroom.

Ms. Martins' declaration (filed in support of her Rule 59 motion) also alleges, under penalty of perjury, that "some shenanigans took place within the Courthouse between the Judge and Court Clerk that the Plaintiff can prove." [ECF No. 188, p. 4]. Her declaration states that "the Court Clerk" told her on November 7, 2017 at 1:21 p.m. that her written motion for continuance had not been filed but that "she would get someone to do it as soon as possible." [ECF No. 188, p. 4]. The declaration then alleges that her written motion "magically appeared as a docket entry on 11/6/2017 at 11:51 a.m., twelve minutes after the Courts [sic] entry Dismissing the Matter." [ECF No. 188, p. 4].

In both her motion to amend and her reply, Ms. Martins also contends that the with-prejudice dismissal was improper because she says it is an unjustified sanction of last resort.

RCCL opposes the motion to alter or amend judgment, arguing that a Rule 59 motion cannot be used to relitigate old matters or raise arguments and evidence that could have been raised before entry of judgment. [ECF No. 196]. RCCL emphasizes that the motion ignores that its experts *were* timely disclosed and had their depositions taken after their reports were provided.

RCCL argues that (1) "Plaintiff has not alleged any unjust circumstances here," (2) "she merely was not prepared for trial," (3) "there is no injustice in holding Plaintiff accountable for her own actions," and (4) it "would have suffered an incalculable

prejudice had the Court granted the continuance because of the time and expense it had invested in conducting timely discovery and then preparing its defense" for the specially scheduled trial. [ECF No. 196, p. 3].

As outlined below, however, RCCL has not adequately responded to Ms. Martins' position that a with-prejudice dismissal is unwarranted, and it has not convinced me that my earlier ruling was correct. Instead, upon renewed analysis, I now conclude that the dismissal should not have been with prejudice.

The Undersigned permitted Ms. Martins to file a reply memorandum, and she did so. [ECF Nos. 200; 208].

<u>Declarations and Information From Former Counsel</u>

Because Ms. Martins' motion is based in large part on her purported inability to prepare for trial because of her attorney's refusal to turn over the case file, the Court required her former attorneys to submit declarations and copies of communications they had with both her and The Florida Bar. [ECF No. 209]. They complied. They filed two declarations [ECF Nos. 212-213], a notice of filing that attached the communications [ECF No. 214], and a "Notice of Legal Position." [ECF No. 215].

One former attorney explained that Ms. Martins requested her file only once, in an April 19, 2017 email in which she did not make a specific request for deposition copies. [ECF No. 213]. He noted that she did not ask for deposition transcripts until November 27, 2017 (which is almost three weeks after the Court dismissed her case

when she refused to proceed with the scheduled trial). He also noted that on May 2, 2017, he emailed Ms. Martins a list of all experts the firm retained, along with their contact information. He further noted that all experts had copies of their own deposition transcripts.

The declaration pointed out that nine expert deposition transcripts or excerpts of transcripts had been filed on CM/ECF and were available for Ms. Martins "via Pacer – for much less money than it cost us, incidentally." [ECF No. 213, p. 3]. The declaration also noted that Ms. Martins herself had filed deposition designations of seven witnesses, including two of Plaintiffs' expert witnesses and four medical staffers.

The declaration provided additional information about Ms. Martins' dealings with her former lawyers. On April 19, 2017, counsel responded to her request the same day, with the following email response: "It isn't your file. It's ours. And we do not have to and will not forward it or a copy of it until and unless our case costs are paid first."

Significantly, this former attorney explained that he sent Ms. Martins copies of several expert depositions by email on November 28, 2017 -- including Dr. Nestor de la Cruz-Munoz. [In other words, counsel provided Ms. Martins with specific deposition transcripts when she asked for them].

The declaration also explains that "The Florida Bar agreed" with their position that "it is ethically permissible for us to retain the case file, which is ours to begin with, until Ms. Martins pays the outstanding costs. Albeit, we do have to provide Ms. Martins

material or information to avoid foreseeable prejudice to her interests." [ECF No. 213, p. 5]. He also pointed out that he gave Ms. Martins a copy of a May 11, 2017 letter "which memorialized the Florida Bar's position." [ECF No. 213, p. 5].

The former attorney's declaration said:

It should be noted that Ms. Martins did **not thereafter ask me** or anyone in my firm or Mr. McKee or anyone in his firm **for any material** or information, including deposition transcripts, to **purportedly avoid foreseeable prejudice to her interests**. Nor did Ms. Martins ask this Court to compel our production of any such material or information. If Ms. Martins had asked any of us for any material or information, including deposition transcripts, to purportedly avoid foreseeable prejudice to her interests, and if the requested material or information was indeed needed to avoid foreseeable prejudice to her interests, **then we would have of course provided the material or information to her** – just as I advised her we would, and as exemplified by the fact that I e-mailed her on May 2, 2017, the listing of the names and contact information of all of the experts my firm retained.

[ECF No. 213, p. 5 (emphasis added)]. The other former attorney's declaration is substantively identical. [ECF No. 212].

The materials submitted by her former attorneys include a May 9, 2017 email from one of her former attorneys, summarizing her dilemma and reminding her of the difficulty she would face in proceeding to trial on a *pro se* basis. Because the Undersigned views this email to be a succinct and cogent outline of Ms. Martins' legal posture as of early May 2017, I am quoting the entire email verbatim:

Marla:

I am sure by now that you have been to several lawyers all of whom have told you that we secured you and your family the right settlement in light

35

of the situation. I know that you understood Judge Goodman's message today that **you have a lot of work and expenses in front of you** if you plan on trying this case in November.

Given the ruling on the summary judgment, the case is now worth less money than you will be paying even just two of the seven world class experts we retained for you to appear at trial. Remember, the jury cannot award you money for the pain and suffering for losing your daughter. They cannot legally do it even if they wanted to. **The amount that you are legally entitled to is just too small for you to continue in a trial of this case.** You will cost yourself tens of thousands of dollars even if you win.

You got out of the settlement. We will never understand why you did it but you did. **You are facing an uphill and unwinnable battle.** I would urge you to contact Michael Drahos to see if Royal Caribbean will put the settlement offer back on the table for you and your family.

[ECF No. 214-1, p. 6 (emphasis supplied)].

The material submitted also includes a November 8, 2017 email from former counsel to Ms. Martins, noting that she "plainly saw" certain experts on RCCL's exhibit list because she "handwrote objections pertaining to their files, CVs and deposition transcripts." [ECF No. 214-1, p. 10]. The email memo further points out that Ms. Martins "marked 'ok' on the CV of Dr. de la Cruz as well as his deposition transcript on this exhibit list." [ECF No. 214-1, p. 10]. And it emphasized that Ms. Martins listed Dr. de la Cruz's deposition as her own exhibit 21.

The former attorneys' statement of legal position advises that they incurred more than $120,000 prosecuting the case. It concedes that the Court has authority to require them to turn over the entire file to Ms. Martins without immediate payment of some or all of the debt but asks that the Court not do that because, among other reasons,

she never made a "clear showing of urgent need for specific file material" or "her inability to pay the costs." [ECF No. 215, p. 2]. It further noted that Ms. Martins never asked the Court "to compel [] production of any such material or information prior to showing up late for her first day of trial ill-prepared." [ECF No. 215, p. 2].

**Applicable Legal Principles and Analysis**

<u>The One-Sentence Recusal/Disqualification Comment</u>

Ms. Martins submitted a 19-page motion to alter or amend and an 11-page reply. She included a one-sentence comment, on page 2 of the motion, about her preference that I recuse myself after vacating the judgment. The Court denies the recusal request for two reasons.

First, this sole, succinct comment is not a motion or formal request for relief. Courts do not consider requests for relief which are "buried in a memorandum of law." *Meyer v. Bank of Am., N.A.*, No. 1:11-CV-00528-BLW, 2012 WL 4470903, at *9 (D. Idaho Aug. 14, 2012), *report and recommendation adopted,* 2012 WL 4458141 (D. Idaho Sept. 26, 2012) (finding that a "'motion' buried in a memorandum opposing a motion to dismiss . . . does not provide the Court with a basis for exercising its discretion under Rule 15(a)(2) to allow amendment."); *Robert Kulasik & Assocs., Inc. v. CBS Boring & Mach. Co., Inc.,* No. 90 C 0425, 1990 WL 65800, at *2 (N.D. Ill. May 7, 1990) (explaining that "if a party is serious about a claim for relief, it should present that claim in an appropriately serious fashion."). *See also Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 896 n. 5 (1990)

(noting the clear distinction between requests and motions); *Simmons v. Vill. of Willow Springs*, No. 02 C 9379, 2004 WL 2036405, at *15 (N.D. Ill. Sept. 10, 2004) ("As a threshold matter, an off-handed 'motion' buried in a Local Rule response is not a proper vehicle to bring any matter to the court's attention. All of the parties are warned that any motion must be properly noticed and presented, so that the court and the opposing party may have an opportunity to address it properly. A reference to 'moving to strike' in a response is not sufficient to preserve any objection.").

Second, motions to recuse or disqualify need to be based on grounds other than the judge's rulings in the very case at issue -- a circumstance not present here. *Thomas v. Tenneco Packaging Co., Inc.* 293 F.3d 1306, 1329 (11th Cir. 2002) (finding, in general, "bias sufficient to disqualify a judge must stem from extrajudicial sources" unless a "judge's remarks in a judicial context demonstrate such pervasive bias and prejudice that it constitutes bias against a party.") (internal quotation omitted). In fact, the Supreme Court has held that "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States,* 510 U.S. 540, 555 (1994); *Hall v. Georgia*, 649 F. App'x 698, 700 (11th Cir. 2016) (noting that adverse ruling is insufficient to raise bias issue); *In re Walker*, 532 F.3d 1304, 1311 (11th Cir. 2008) (finding that challenges to adverse rulings are generally grounds for appeal, not recusal) (internal citations omitted); *see also In re Evergreen Sec., Ltd.*, 570 F.3d 1257, 1274 (11th Cir. 2009) ("'[E]xcept where pervasive bias is shown, a judge's rulings in the same or a related case are not a

sufficient basis for recusal.'") (quoting *Bolin v. Story*, 225 F.3d 1234, 1239 (11th Cir. 2000)).

## The Merits of the Rule 59 Motion

Concerning the substance of the Rule 59 motion, a court has discretion in deciding whether to grant a motion for reconsideration. *See Drago v. Jenne*, 453 F.3d 1301, 1305 (11th Cir. 2006). The only grounds for granting a Rule 59 motion are newly-discovered evidence or manifest errors of law or fact. *In re Kellogg*, 197 F.3d 1116, 1119 (11th Cir. 1999) (internal citation omitted). A Rule 59(e) motion cannot be used "to relitigate old matters, raise argument or present evidence that could have been raised prior to the entry of judgment." *Arthur v. King*, 500 F.3d 1335, 1343 (11th Cir. 2007) (quoting *Michael Linet, Inc. v. Village of Wellington, Fla.*, 408 F.3d 757, 763 (11th Cir. 2005)).

Ms. Martins' motion is unconvincing when it focuses on the denial of the continuance and the dismissal. For that portion, the motion is a mix of an effort to relitigate old matters -- her request to take additional discovery -- with allegations of an abuse of discretion in denying the motion for continuance based on a purported last-minute ambush of new witnesses and an inability to prepare for trial because she could not obtain the file.

The Court is not convinced by any of these arguments and, therefore, rejects all of them as unpersuasive and inadequate to justify the requested relief concerning the denial of the continuance and the dismissal.

First, the Undersigned previously denied Ms. Martins' request to take additional discovery about Dr. Hamilton. The discovery deadline had expired, her former counsel had already taken Dr. Hamilton's deposition, and Ms. Martins did not establish grounds to take a second deposition. She has not raised any new issues about that earlier ruling. The Court denies the Rule 59 motion to the extent it relies upon an earlier order denying additional discovery requested long after the discovery deadline expired. *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1307 (11th Cir. 2011) (affirming order granting defendant's summary judgment motion and denying additional post-deadline discovery because trial court has broad discretion to compel or deny discovery and noting that "a district court's decision to hold litigants to the clear terms of its scheduling orders is not an abuse of discretion") (internal citation omitted).

Moreover, under the abuse of discretion standard, discovery rulings will not be overturned "'unless it is shown that [they] resulted in substantial harm to the appellant's case.'" *Josendis*, 662 F.3d at 1307 (quoting *Iraola & CIA, S.A. v. Kimberly-Clark Corp.*, 325 F.3d 1274, 1286 (11th Cir. 2003) (internal quotation omitted)).

Ms. Martins has not demonstrated that the Court abused its discretion in denying her motion for additional discovery and certainly has not established that the ruling generated substantial harm to her case. Accordingly, the Court will not grant her motion urging a discovery ruling abuse of discretion. *Williams v. Ala. Dep't of Indus. Relations*, 684 F. App'x. 888, 896 (11th Cir. 2017) (rejecting argument that additional

discovery should have been provided and noting that the district court provided "ample opportunity" for discovery); *Rowell v. Metro. Life Ins. Co.*, 579 F. App'x. 805, 807 (11th Cir. 2014) (noting that district court did not abuse discretion in denying third request to extend discovery deadline).

The mere fact that Ms. Martins was proceeding on a *pro se* basis does not entitle her to additional, post-deadline discovery or the right to retake depositions her former attorneys had taken. *Watkins v. Regions Mortg. Inc.*, 555 F. App'x. 922, 924 (11th Cir. 2014) (finding that trial court did not abuse its discretion in denying the *pro se* plaintiff's requests to extend discovery and noting that it "merely held [plaintiff] to the clear terms of its scheduling order").

Ms. Martins challenges the denial of her motion for continuance submitted (either orally or in writing or both) on the day of trial. The Eleventh Circuit in *Securities and Exchange Commission v. Levin,* 849 F.3d 995, 1005 (11th Cir. 2017) outlined the relevant factors in determining whether a trial continuance is warranted:

> There are four factors we generally consider in determining whether a trial continuance is warranted. First, we examine the diligence of the party requesting the continuance to ready the case prior to the date set for trial. *See Hashwani v. Barbar*, 822 F.2d 1038, 1040 (11th Cir. 1987) (citation omitted). Second, we consider the likelihood that the need for a continuance could have been met if a continuance was granted. *Id.* Third, we examine the extent to which granting the continuance would have been an inconvenience to the court and the opposing party. *Id.* Fourth, we consider the extent to which the requesting party might have suffered harm as a result of the district court's denial of the continuance. *Id; see also Fowler v. Jones*, 899 F.2d 1088, 1094 (11th Cir. 1990). Another relevant factor we entertain is whether the district court has granted a prior continuance

in the case. *See Quiet Tech. DC–8, Inc. v. Hurel–Dubois UK Ltd.*, 326 F.3d 1333, 1351 (11th Cir. 2003).

*Levin*, 849 F.3d at 1005. Moreover, a trial court's ruling on a motion for continuance will not be reversed unless the ruling is "arbitrary, unreasonable, and severely prejudicial." *Id.* (internal citation omitted).

Concerning the first factor, Ms. Martins was not diligent.  To the contrary, she waited until the morning of the special set trial to request a continuance. Moreover, all of her actions in the weeks preceding the trial sent the message that she was going to go to trial. Alternatively, nothing she did in the weeks before trial suggested, even remotely, that she would not be ready for trial or that she would seek a continuance. In addition, the trial scheduling order requires motions for a trial continuance to be filed 20 days before trial. Ms. Martins' motion for a continuance did not (obviously) come anywhere near meeting that deadline.

The second factor does not help Ms. Martins because she did not specify how long of a continuance she was requesting and because the purported grounds for the continuance were either incorrect or taken out of context. For example, she was not "ambushed" by the disclosure of an expert witness whose deposition transcript was filed in the public record more than a year earlier.

The third factor militates against Ms. Martins' motion because a continuance would have inconvenienced both the Court and RCCL. As RCCL's counsel explained, he and his legal team had incurred significant expense and preparation time getting

ready for the special set trial. Moreover, the defense team had to coordinate the trial appearances of many expert witnesses, a task which is often problematic and difficult. And the Court had already set aside several days for the trial and had already arranged for the jurors to be summoned.

The fourth factor does not help Ms. Martins either because it is entirely speculative how a trial continuance would have benefitted her, a point which relates to the issue of how she might have suffered harm from the denial of the continuance. Ms. Martins would not have been able to take additional discovery had the trial been continued. She might have been better prepared for trial, but she should have been prepared by the trial date. If she thought that she could not get timely prepared, then she should have filed a motion for continuance months (or at least many weeks) before the trial. Similarly, she should have filed a motion asking the Court to compel her former attorneys to turn over the file (assuming that she had first made specific requests for deposition transcripts, which she had not).

In addition, Ms. Martins did not need to refuse to proceed with the trial to preserve her legal position. Her primary grievance (incorrect as it turned out to be) was that RCCL had ambushed her with *its* new trial witnesses. Even if that were true, which it was not, Ms. Martins could have started the trial with her *own* witnesses and exhibits and sought relief concerning the RCCL witnesses she says were sprung on her at the last minute. But she did not do that. Instead, she flat-out refused to proceed.

At bottom, Ms. Martins did not take the steps necessary to get prepared for trial even though the Court cautioned her about the significant burden of proceeding on a *pro se* basis in a medical malpractice case with significantly limited damages based on the summary judgment Order. She could have obtained missing transcripts from the court reporters, but she did not. She could have reviewed the myriad deposition transcripts already in the file. It is unclear whether she did that completely, but her motion suggests that she had reviewed at least some of that publicly available material. She could have filed a motion asking this Court to compel her former attorneys to produce all deposition transcripts before their costs were fully reimbursed. She could have pursued a grievance with The Florida Bar, alleging her belief that the withheld materials were unduly prejudicing her ability to proceed to trial.

But she did not do any of those things. Rather, she caused RCCL and the Court to get ready for a special set trial that she refused to participate in when the scheduled starting time arrived.

Thus, the Court's Order denying the last-minute motion for a continuance was appropriate. *S.E.C. v. Calmes,* 499 F. App'x. 917, 918 (11th Cir. 2012) (affirming judgment in civil enforcement jury trial involving defendants who "squandered" their time and noting that the district court had scheduled the trial nearly a year in advance, and the

SEC had witnesses travel from out of state); [8] *Baker v. Coto*, 154 F. App'x. 854, 859 (11th Cir. 2005) (affirming jury verdict for defendants);[9] *see generally Arabian Am. Oil Co. v. Scarfone*, 939 F.2d 1472, 1479 (11th Cir. 1991) (rejecting argument that trial court erred in denying a motion for continuance made after permitting appellant's counsel to withdraw two days before trial and noting that "a lawyer's withdrawal does not afford a party an absolute right to a continuance.") (quoting *Mekdeci v. Merrell Nat'l Labs.*, 711 F.2d 1510, 1520 n. 12 (11th Cir. 1983); *Cable/Home Commc'n Corp. v. Network Prods., Inc.*,

---

[8]    The motion for continuance in the *Calmes* case was filed less than a week before trial, while Ms. Martins' motion was made on the day of trial. Thus, the circumstances in *Calmes* were not as egregious as the ones here, where Ms. Martins waited until the day of trial to seek a continuance and was involved in trial preparation with opposing counsel the week before trial.

[9]    In the *Baker* case, the Eleventh Circuit found that

> [t]he district court did not abuse its discretion in denying the continuance. First, Baker failed diligently to ready his case prior to the first day of trial. **Although he had not received certain trial materials from his lawyers after they withdrew from representing him,** Baker failed to notify the court until the first day of his second trial. Second, Baker was familiar with his case because he recently had witnessed his first trial. Third, Baker's request for a continuance **on the first day of trial** was untimely and **obviously would have inconvenienced** the court, defendants, witnesses, and members of the jury. Fourth, "In a civil case, a lawyer's withdrawal . . . does not afford the party an absolute right to a continuance."

*Id.* (emphasis added) (citation omitted).

The attorneys in *Baker* had withdrawn approximately more than forty days before trial, while Ms. Martins' attorneys had withdrawn more than *six months* before trial.

902 F.2d 829, 859 (11th Cir. 1990) (noting "that the subject motion was defendants' second request for enhanced time to respond to plaintiffs' summary judgment motion"); *Stouffer, II v. Stifel, Nicolaus & Co., Inc.*, 83 F.3d 431 (10th Cir. 1996) (denying *pro se* plaintiff's request for an extension of time to respond to a motion to dismiss was not an abuse of discretion where two previous extensions had been granted).

Because there is no newly discovered evidence, contrary to Ms. Martins' allegations, her only remaining argument is a purported manifest error of law. A manifest error of fact or law occurs when the Court finds that there is a need to alter or amend the judgment to prevent injustice. *Burger King Corp. v. Ashland Equities, Inc.*, 181 F. Supp. 2d 1366, 1369 (S.D. Fla. 2002). Plaintiff has not established any unjust circumstances here concerning the denial of her request for a trial continuance. She simply was not prepared for trial -- but tried to unsuccessfully shift the blame for her own lack of readiness to RCCL's purported trial ambush.

There is no injustice in holding Ms. Martins accountable for her own actions. There are no grounds to conclude that a dismissal of the case was improper. *Gibson v. Valley Ave. Drive-In Rests., LLC*, Case No. 2:12-cv-3901, 2014 WL 51223, at *2 (N.D. Al. Jan. 7, 2014) (noting that *pro se* plaintiff failed to either identify newly-discovered evidence or manifest errors of law or fact but was instead, in effect, seeking "a second chance to present opposing proof and positions").

<u>But Should The Dismissal Have Been With-Prejudice?</u>

The Undersigned concludes that the with-prejudice dismissal *might* have been appropriate and *might* be upheld on appeal, but this conclusion is inherently uncertain, and the Court now has determined that a more-prudent approach is warranted. Several other circuits have **upheld** with-prejudice dismissals under scenarios suggesting that a with-prejudice dismissal would be permissible here. But the Eleventh Circuit's jurisprudence does not appear to expressly support that extreme result, and a cogent argument can be made that our circuit would, in fact, not permit a with-prejudice dismissal here, where there is no history of misconduct by Ms. Martins before the with-prejudice dismissal was entered.

To be sure, Ms. Martins has incorrectly stated the procedural history in her motion to alter and amend, but those misstatements were made *after* the Court entered the with-prejudice dismissal and judgment. Therefore, those after-the-fact misstatements cannot be used to demonstrate a pattern of abuse necessary for the earlier-issued with-prejudice dismissal and judgment.

Federal Rule of Civil Procedure 41(b) governs involuntary dismissals. It provides, in pertinent part, that "[i]f the plaintiff fails to prosecute **or** to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it. Unless the dismissal order states otherwise, a dismissal under this subdivision (b) and any dismissal not under this rule – except one for lack of

jurisdiction, improper venue, or failure to join a party under Rule 19 – operates as an adjudication on the merits." Fed. R. Civ. P. 41(b) (emphasis added).

Under the Rule, a plaintiff's failure to prosecute is disjunctive from compliance with the Federal Rules/Court Orders. Thus, cases interpreting with-prejudice dismissals for failure to comply with court orders are distinct from failure to prosecute and are not, in my view, necessarily persuasive.

The parties have not called the Court's attention to an 11th Circuit case deciding whether it is an abuse of discretion for a trial court to dismiss with prejudice under Rule 41(b) because, on the day of trial, a *pro se* party did not show up or was unprepared. However, the Eleventh Circuit has reversed with-prejudice dismissals when there is inadequate evidence of continued willful delay or other significant misconduct.

For example, in *Beavers v. American Cast Iron Pipe Co.*, 852 F.2d 527 (11th Cir. 1988), the appellate court held that it was reversible error for the trial court to have entered a with-prejudice dismissal of plaintiffs' sex discrimination claim. *Id.* at 530–31. In doing so, the appellate court noted that the district court "did not make any finding of bad faith by the plaintiffs to any discovery orders or of any other insubordinate behavior by them." *Id.* at 531. Moreover, the Eleventh Circuit emphasized that "the record does not indicate that the district court considered any less drastic sanctions." *Id.* Significantly, the appellate court highlighted the fact that "it is not clear that the plaintiffs' behavior in this case could be characterized as more than negligent." *Id.*

The Undersigned cannot find, based on this record, that Ms. Martins' conduct rose above negligent or careless concerning her failure to timely prepare for trial and her refusal to proceed with the trial. The Court is therefore reluctant to impose the extreme sanction of a with-prejudice dismissal. *See generally Flaksa v. Little River Marine Const. Co., Inc.*, 389 F.2d 885, 887–89 (5th Cir. 1968) (noting that the district court was "more than patient under the circumstances" but nevertheless reversing the with-prejudice dismissal as too harsh a sanction and holding that a with-prejudice dismissal is a "drastic remed[y] which should be used only in extreme situations[.]").

Although *Flaksa* is 1968 case, more-contemporary decisions by our circuit court continue to adopt the same judicial philosophy that "[t]his much, however, is clear: a dismissal *with prejudice*, whether on motion or *sua sponte*, is an extreme sanction that may be properly imposed *only* when: (1) a party engages in a clear pattern of delay or willful contempt (contumacious conduct), and (2) the district court specifically finds that lesser sanctions would not suffice. *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1337-78 (11th Cir. 2005) (vacating and remanding with-prejudice dismissal) (internal quotation and citations omitted). *See generally Warner v. Tinder, Inc.*, 675 F. App'x. 945 (11th Cir. 2017) (reversing and remanding with-prejudice dismissal and noting that the trial court did not make the necessary two findings required by *Betty K Agencies*); *Bright v. Zeigler*, 644 F. App'x. 889, 891-92 (11th Cir. 2016) (reversing dismissal of *pro se* plaintiff's civil rights lawsuit against police officers for failure to prosecute,

noting that the trial judge did not make findings of a clear pattern of delay or willful contempt and pointing out that the record did not reveal that "lesser sanctions, such as a dismissal without prejudice, would have been inadequate").

The Eleventh Circuit standard for dismissing a case with prejudice is high. In fact, findings satisfying both prongs of the *Betty K Agencies* rule are "essential before dismissal is appropriate," and district courts "must make these findings" because "the sanction of dismissal with prejudice is so unsparing . . . and we strive to afford a litigant his or her day in court, if possible." *Abreu-Velez v. Bd. of Regents*, 248 F. App'x. 116, 118 (11th Cir. 2007) (internal quotation omitted) (discussing *Betty K Agencies* and reversing order dismissing *pro se* physician's lawsuit alleging that the board of regents pressured her into quitting her job in retaliation for her exercise of First Amendment rights). *See also Kilgo v. Ricks*, 983 F.2d 189, 193 (11th Cir. 1993) (vacating and remanding order vacating prisoner's lawsuit based on purported improper refusal to act on request for medical treatment and noting that the requisite finding of extreme circumstances "must, at a minimum, be based on evidence of willful delay" because "simple negligence" is inadequate) (internal quotation omitted).

The Undersigned did not expressly make the dual findings necessary to support a with-prejudice dismissal, and I am unable to do so now based on the existing record. Likewise, I did not expressly consider lesser sanctions, such as a without-prejudice dismissal.

RCCL facially recognizes the applicable standard for a with-prejudice dismissal. For example, it notes that a with-prejudice dismissal is proper where there is a "clear record of delay or willful contempt and a finding that lesser sanctions would not suffice." [ECF No. 196, p. 5 (internal quotation omitted)]. But RCCL does not establish the standard and also does not discuss the absence of specific findings. It contends, in a conclusory way, that "Plaintiff should have been prepared for Defendant's experts to testify at trial." [ECF No. 196, p. 6]. But this is not the same as a pattern of misconduct. The Court agrees that Ms. Martins surely should have been ready for trial and should have known about RCCL's experts. Her failure to be ready and her refusal to go forward are the circumstances that led to the dismissal. But they are not factors to justify a with-prejudice dismissal.

RCCL relies upon *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir. 1985) to support the with-prejudice dismissal. But the facts there are far-more extreme than the ones here. Significantly, the appellate court noted that the district court found that the plaintiff's counsel "engaged in a pattern of delay and deliberately refused to comply with the directions of the court" and observed that the record supported the finding. *Id.* The plaintiff's counsel failed to submit a preliminary statement despite the court's "repeated insistence" and failed to appear for a pretrial conference. *Id.* These missteps were in addition to his failure to be ready to proceed with trial. *Id.*

The pattern of delay and other misconduct in *Goforth* cannot fairly be said to describe Ms. Martins' conduct. To the contrary, she appeared at every hearing and, until trial, did what was expected of litigants (e.g., working with opposing counsel to prepare a stipulation with exhibit and witness lists). Moreover, *Goforth* repeated the rule that "dismissal of a case with prejudice is considered a sanction of last resort, applicable only in extreme circumstances." 766 F.2d at 1535 (internal quotation omitted). Ms. Martins surely inconvenienced RCCL and the Court, but the Undersigned is not completely comfortable describing her lack of preparation to be an "extreme circumstance." It *might* be, but the Undersigned deems a less-drastic result to be the appropriate one here.

Therefore, the Undersigned finds that Ms. Martins' motion is meritorious regarding the with-prejudice dismissal.

The Undersigned recognizes that RCCL will be required to spend additional fees and costs if Ms. Martins were to refile her lawsuit. However, the Undersigned is unable to enter a costs award as a precondition to Ms. Martins' ability to refile the Complaint because the rule authorizing that (i.e., Rule 41(d)) applies only to *voluntary* dismissals. *Vanmoor v. Univ. Sur. Corp.,* No. 08-21384-CIV, 2009 WL 688987, at *4 (S.D. Fla. Mar. 11, 2009) (fully adopting a magistrate judge's report and recommendations and stating, "[b]y its plain language, Rule 41(d) applies only when the plaintiff dismisses the previous action" and "[t]he clear language of the January 3rd Order demonstrates that

this is not the case, and that the Court dismissed the action as a sanction for Plaintiff[']s failure to comply with the court's earlier order."). In the *Vanmoor* case, based on this, the magistrate judge reasoned that "Rule 41(d), which only applies when the plaintiff dismisses the prior action, is inapposite to this action and Defendant's request for costs and a stay pursuant to Rule 41(d) should be denied." *Id.*

## Conclusion

The Court **grants in part** and **denies in part** Ms. Martins' Rule 59 motion to vacate or amend, as follows:

1.      The order denying the motion (or motions) for continuance remains unchanged.

2.      The case is still dismissed -- but with*out* prejudice.

3.       The judgment in RCCL's favor, and against Ms. Martins, is vacated.

4.      If Ms. Martins wants to refile the Complaint, then she must do so within 30 days of the date of this Order.

 **DONE AND ORDERED** in Chambers, in Miami, Florida, on February 27, 2018.


_____
Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies Furnished to:</u>**
All Counsel of Record

Marla Martins, *Pro Se*
7687 Forestay Drive
Lake Worth, Florida 33467