UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 15-21124-CIV-GOODMAN
[CONSENT CASE]

MARLA MARTINS, et al.,

      Plaintiffs,

v.

ROYAL CARIBBEAN CRUISES, LTD.,

      Defendant.

_____/

**ORDER ON DEFENDANT'S MOTION FOR ATTORNEY'S FEES
AND NONTAXABLE COSTS**

Proceeding as a *pro se* litigant is a sometimes-risky, danger-lurking scenario, riddled with hazardous hurdles and substantial legal perils. This order illustrates the consequences which a plaintiff can suffer when she decides to represent herself in a complicated medical malpractice case against a major cruise line operator and rejects the Court's offer to provide a Volunteer Lawyer's Program attorney. Because *pro se* litigants do not have authority to abuse the court system and unduly prejudice the opposing party (and because that is what happened here), it is no surprise that the consequences are, to be diplomatic, not good for Plaintiff Marla Martins.

As outlined below, Ms. Martins now finds herself on the wrong end of a sanctions-type motion (i.e., one seeking fees under a theory requiring bad faith) after

violating several Court orders and causing her lawsuit, filed in connection with the death of her minor daughter during a cruise, to be dismissed with prejudice. Ms. Martins could have settled this case in 2016 for $500,000 but opposed a motion to enforce a settlement agreement filed by Defendant Royal Caribbean Cruises Ltd. ("RCCL") (and supported by her prior counsel). Thus, the result here -- an order granting an attorney's fees and nontaxable costs motion against her -- is surely a sad and unfortunate development in an already-somber scenario. Nevertheless, this troubling and bitter result is justified, and the Court **grants** RCCL's motion for attorney's fees and nontaxable costs [ECF No. 313].

## I.   Factual and Procedural Background

By way of factual introduction, Ms. Martins refused at the last minute to proceed with a previously scheduled trial and then unduly prejudiced RCCL in connection with a rescheduled trial by violating several Court orders entered in the weeks leading up to a second trial, refusing to participate in the Court-ordered pretrial stipulation, failing to attend the scheduled pretrial conference, and failing to file her exhibit and witness lists (or announce her intent to use earlier-filed lists) despite specific orders requiring her to submit the filings. The Court used these circumstances as grounds for an order dismissing her wrongful death lawsuit (pursuing claims under the Death on the High Seas Act (DOHSA)) with prejudice. [ECF No. 302].

The facts underlying the with-prejudice dismissal also apply to RCCL's motion for fees and nontaxable costs, so the Undersigned will include the background from that earlier order here.

This action arises out of the death of Briana Martins while she was a passenger aboard the RCCL cruise ship *Explorer of the Seas* in August 2013. Ms. Martins alleges that her daughter Briana ingested bacteria-ridden food while aboard the ship and developed Salmonellosis. [ECF No. 222, ¶ 46]. Plaintiff alleges that Briana was taken to the shipboard medical facility with complaints of vomiting, abdominal cramps, and diarrhea. [ECF No. 222, ¶ 47]. Plaintiff alleges that the ship's doctors and nurses failed to properly diagnose and treat Briana's condition and that RCCL failed to arrange for a medical disembarkation in Haiti. [ECF No. 222, ¶¶ 49-62, 88]. Plaintiff contends that, because of RCCL's negligence, Briana died on the ship as a result of peritonitis due to a small bowel anastomotic site perforation. [ECF No. 222, ¶¶ 74, 88].

Marla Martins, Briana, Marcelo (Ms. Martins' husband), G.E. (a minor child of Ms. Martins), and Tatiana Martins (another daughter of Ms. Martins) boarded the *Explorer of the Seas* on August 22, 2013. [ECF No. 222]. Briana was taken to the infirmary on the *Explorer of the Seas* at 10:50 p.m. on August 27, 2013 and again at approximately 2:30 a.m. on August 28, 2013. *Id.* Briana died on the ship on the morning of August 28, 2013. [ECF No. 222, pp. 10-11].

Plaintiffs filed a seven-count complaint alleging wrongful death under DOHSA (Count I); alternative wrongful death under DOHSA based upon apparent agency (Count II); negligent hiring, retention, and training (Count III); and negligent infliction of emotional distress ("NIED") for Marla, Marcelo, G.E., and Tatiana (Counts IV-VII). [ECF No. 1]. The Court dismissed Count III, leaving six counts. [ECF No. 30].

On August 1, 2016, RCCL filed a summary judgment motion. [ECF No. 53]. Plaintiffs filed an opposition response [ECF No. 69], and RCCL filed its reply on August 18, 2016 [ECF No. 73]. With leave of Court, Plaintiffs filed a sur-reply. [ECF No. 81]. The Court granted RCCL's summary judgment motion in large part. [ECF No. 90]. The Court permitted Ms. Martins to proceed to trial on Counts I and II, but precluded all other claims for her and the other Plaintiffs. [ECF No. 90, p. 2]. The Court ruled in RCCL's favor on the NIED claims. [ECF No. 90, p. 49].

Almost a month after the summary judgment ruling, on November 29, 2016, Plaintiffs' counsel filed a motion for "court guidance," advising that Ms. Martins agreed to settle the case on behalf of herself and all other Plaintiffs. [ECF No. 91]. The motion explained that Ms. Martins and the other Plaintiffs were refusing to sign the Closing Statement and the Release. The motion asked for leave to execute the Release on behalf of Plaintiffs and to allocate the $500,000 in settlement funds as detailed in the Closing Statement.

4

RCCL then filed a motion to enforce the settlement agreement and for sanctions against Ms. Martins [ECF No. 96], who later that same day filed, in a *pro se* capacity, a "Declaration Statement of Plaintiff in Opposition to Motion for Guidance" [ECF No. 98]. Plaintiffs' counsel then filed a motion to withdraw [ECF No. 101], which was granted [ECF No. 102]. Ms. Martins filed an opposition response to RCCL's motion to enforce the settlement agreement. [ECF No. 104].

The Court held an evidentiary hearing on the motion to enforce the settlement agreement and denied RCCL's motion in a 45-page order. [ECF Nos. 122; 131]. Although Ms. Martins was represented by (new) counsel at the evidentiary hearing, that attorney's participation was limited to the motion to enforce, and Ms. Martins began to represent herself after the ruling that denied RCCL's motion to enforce the settlement agreement.

Trial was initially set for November 6, 2017. [ECF No. 137]. On that very date, however, Plaintiff requested that this Court continue the trial, but the Court denied the request. [ECF Nos. 182; 186, pp. 9-10, 19-20]. Plaintiff advised the Court that she was not prepared to go forward with the trial on that date. [ECF No. 186, p. 20]. At the time of her surprise announcement,[1] a panel of prospective jurors was lined up in the hallway

---

[1] The announcement was unexpected and inconsistent with Ms. Martins' conduct before trial. As explained in an earlier order, Ms. Martin took many steps to acknowledge her intent to proceed with trial on the specially set trial date. [ECF No. 180, p. 2]. She filed motions, including motions to use a flip board at trial, and deposition designations. [ECF Nos. 138; 141; 144-50]. She also participated in pre-trial

outside of the courtroom, waiting to be brought in to begin jury selection. [ECF No. 176]. RCCL then moved to dismiss the case with prejudice for failure to prosecute. [ECF No. 176]. This Court granted RCCL's motion and entered a final judgment in RCCL's favor. [ECF Nos. 176; 183].

Plaintiff filed a motion to amend or correct the final judgment under Rule 59 of the Federal Rules of Civil Procedure and argued that this Court's denial of her request for a trial continuance was an abuse of discretion and a manifest error of law. [ECF No. 187]. On February 27, 2018, this Court entered an order granting the motion in part and denying it in part. [ECF No. 216].

This Court did not disturb its previous ruling denying Plaintiff's motion for continuance but amended the dismissal of the case to be *without* prejudice and vacated the judgment against Plaintiff. [ECF No. 216, pp. 5, 53]. In doing so, this Court stated that a with-prejudice dismissal was not warranted because there had been no pattern of delay or "history of misconduct" by Plaintiff before the Court's dismissal of the action. [ECF No. 216, pp. 47, 52]. Significantly, this Court noted that Plaintiff had "appeared at

---

hearings, such as the hearing held on October 23, 2017, and a final pre-trial conference, held on November 2, 2017. [ECF Nos. 152; 166]. That final pre-trial conference lasted one hour and 15 minutes. [ECF No. 166]. At that hearing, Ms. Martins asked for permission to bring electronic equipment into the courtroom for trial, and the Court entered an order permitting her to do that. [ECF No. 168]. She also filed seven separate submissions concerning her designations of myriad deposition transcripts (including excerpts from a cruise ship doctor's deposition, as well as the five other physicians and a nurse). [ECF Nos. 144-50].

every hearing and, until trial, did what was expected of litigants (e.g., working with opposing counsel to prepare a stipulation with exhibit and witness lists)." [ECF No. 216, p. 52].

Although the Court found no pattern of delay or history of misconduct by Ms. Martins before the trial, the Court certainly did not find that she acted in *good faith* on what should have been the first day of trial. To the contrary, the Court flagged conduct that was problematic, to use a comparatively benign term. In an earlier order entered the day after the trial was scheduled to begin in 2017, the Court mentioned her explanations for the last-minute request for a trial continuance in a negative light. [ECF No. 180]. Specifically, the Court noted that she asked for a trial continuance on the day of trial because she said she was being "ambushed" by "surprise" witnesses. But the three doctors she described as surprise witnesses had already prepared reports (which were produced to her prior counsel) and two of the three doctors had already given deposition testimony in the case. And the order granting in part Ms. Martins' motion noted that she "incorrectly stated the procedural history in her motion to alter and amend." [ECF No. 216, p. 47].

On June 4, 2018, the Court held a telephonic scheduling hearing. [ECF No. 238]. During that hearing, the Court mentioned to Ms. Martins the possibility of being represented by an attorney from the Volunteer Attorney Program. The Court followed up that same day with a paperless order, requiring Ms. Martins to, by June 8, 2018, file a

notice indicating whether she would be filing a motion for referral to the Volunteer Attorney Program. [ECF No. 239].

On June 8, 2018, Ms. Martins filed the Court-required notice and advised that "**all Plaintiffs are in agreement and have decided Plaintiffs respectfully will <u>not</u> be filing a Motion for referral to the Volunteer Attorney Program at this time**." [ECF No. 240 (emphasis added)]. Although the order did not require verification of the notice, Ms. Martins submitted the notice in the form of a declaration under penalty of perjury. Neither Ms. Martins nor any of the other Plaintiffs (who are part of her immediate family) ever filed a motion concerning the Volunteer Attorney Program after they filed their notice of non-interest in obtaining a volunteer attorney.

On July 3, 2018, this Court entered an Order Specially Resetting Civil Jury Trial and Pretrial Schedule and re-set the trial to commence on December 17, 2018. [ECF No. 245].

On October 26, 2018, this Court entered an identical order re-setting trial for December 18, 2018. [ECF No. 269]. In the order, this Court set a telephonic pretrial conference to occur on December 10, 2018 at 5:30 p.m., stating that "[e]ach party shall be represented at the pretrial conference." [ECF No. 269, pp. 1-2]. This Court also required the parties to meet at least 15 days before the pretrial conference date to confer on the preparation of a pretrial stipulation. [ECF No. 269, p. 2]. This Court warned that, should any of the parties fail to cooperate in the preparation of the joint pretrial stipulation, the

Court would (upon receipt of a certification by the opposing party stating the circumstances) issue an order requiring the non-cooperating party to show cause why such party failed to comply with the Court's order. [ECF No. 269]. Additionally, this Court's order required the parties to jointly submit proposed jury instructions and verdict forms. [ECF No. 269, p. 3].

As the pretrial conference was scheduled to be held on December 10, 2018, the parties were required to meet on or before November 26, 2018, to discuss the pretrial stipulation. [ECF No. 281, p. 1]. In violation of the Court's trial order, Plaintiff failed to respond to RCCL's request for an in-person meeting and failed to provide any feedback on the proposed Joint Pretrial Stipulation that had been sent to her. [ECF No. 272-2]. On November 26, 2018, RCCL filed a Certificate of Non-Agreement on the Terms of the Joint Pretrial Stipulation, advising the Court of this circumstance. [ECF No. 272].

On November 27, 2018, this Court entered an Order to Show Cause Regarding Plaintiff's Failure to Comply with Scheduling Order, requiring that, "by 5:00 p.m. on December 3, 2018, Ms. Martins shall show cause, in the form of an affidavit or declaration filed on CM/ECF, why she has failed to cooperate in the preparation of the joint pretrial stipulation, including her alleged refusal to meet with defense counsel or provide feedback to Defendant's proposed joint pretrial stipulation." [ECF No. 274, p. 2].

This Court cautioned that "[i]f Ms. Martins fails to provide compelling reasons for her failure to cooperate and continues to refuse to cooperate, then the Court may impose sanctions on Ms. Martins, including, but not limited to, waiving any objections she may have to the Defendant's pretrial stipulation and requiring Ms. Martins to pay Defendant's attorney's fees and costs for filing its Certificate of Non-Agreement." *Id.*

In violation of this Court's Order to Show Cause, Plaintiff submitted a response that (1) was not in the form of an affidavit or declaration, (2) did not explain why she failed to cooperate in the preparation of the required joint pretrial stipulation, and (3) did not advise the Court that she had started to cooperate. [ECF No. 276].

On December 6, 2018, this Court entered an order regarding Plaintiff's response, noting that, as of two weeks before trial, it still did not know Plaintiff's witnesses or exhibits because she failed to cooperate with Defendant to file a joint stipulation, had not unilaterally filed her own witness and exhibit lists, and had not announced an intent to rely on the previously-filed exhibit lists attached to the initial pretrial stipulation. [ECF No. 281, p. 3]. Given the procedural history, this Court sanctioned Plaintiff by deeming any objections she may have to the exhibits on RCCL's exhibit list to be waived. [ECF No. 281, p. 4].

At the conclusion of the order, this Court required Plaintiff to file her exhibit and witness lists by December 13, 2018, or to announce her intent to use the earlier-filed

lists. *Id.* This Court stated that "[i]f Ms. Martins does not comply, **then the Court will dismiss her case once again**." *Id.* (footnote omitted) (emphasis added).

In addition, pursuant to the trial order, the parties were required to jointly submit proposed jury instructions and verdict forms by December 11, 2018. [ECF No. 269, p. 3]. From December 5 through December 10, 2018, RCCL's counsel sent Plaintiff several e-mails requesting that she advise if she had any changes to her previously-submitted instructions and verdict form or objections in response to RCCL's proposed instructions and verdict form. *Id.* However, instead of either providing RCCL's counsel with any changes or stating that she would rely on her prior submissions, Plaintiff was antagonistic and uncooperative. *Id.*

Plaintiff also refused to sign the Notices of Filing Proposed Jury Instructions and Verdict Forms or to authorize RCCL to include an electronic signature on her behalf. [ECF Nos. 269; 287-88]. As a result, RCCL unilaterally submitted (on December 11, 2018) the proposed jury instructions and verdict forms and included Plaintiff's prior submissions. [ECF Nos. 287-88].

On December 10, 2018, this Court conducted its previously-scheduled pretrial conference. [ECF No. 284]. Notwithstanding the fact that Plaintiff was duly noticed of the date and time of the pretrial conference in the July 3, 2018 trial order [ECF No. 245, p. 1] and the October 26, 2018 trial order confirmed that date and time [ECF No. 269, p. 1], Plaintiff failed to appear for the conference [ECF No. 284]. RCCL made an *ore tenus*

motion to dismiss based on Plaintiff's failure to appear, which this Court denied. The Court advised that it intended to issue a formal show cause order and invited RCCL to file an appropriate motion after that. [ECF No. 284].

Later that same day, this Court entered a Show Cause Order Regarding Plaintiff's Failure to Appear at Required Pretrial Conference. [ECF No. 285]. This Court noted that Plaintiff failed to comply with the requirement, in the trial order, that Plaintiff participate in the telephonic pretrial conference and noted that "Plaintiff's failure to comply with the Court Order is the latest in a series of similar violations of court orders concerning the upcoming special-set trial." [ECF No. 285, p. 1]. This Court ordered Plaintiff, by December 12, 2018, to "show cause, in the form of an affidavit or declaration filed on CM/ECF, why she violated the Court's trial scheduling order and failed to appear." *Id.*

This Court also reminded Plaintiff that she had until December 13, 2018, to file her exhibit and witness lists or to announce her intent to use the earlier-filed lists. [ECF No. 285, pp. 1-2]. The Court warned Plaintiff that if she did not file the witness/exhibit lists or submit a compliant response to this show cause order, "then the Court will **dismiss** her case once again" and "[u]nlike the last time . . . it is likely that any dismissal will ultimately be **with prejudice**." *Id.* at p. 2 (emphasis added).

On December 12, 2018, Plaintiff filed a "*Mindful* Motion for a *Mindful* Partial Summary Judgment on *Per Se* Liability." [ECF No. 293 (emphasis in original)]. In the

12

motion, which was made "[u]nder penalties of perjury" and was notarized, Plaintiff "responded" to both of the Court's show cause orders. [ECF No. 293]. Concerning her failure to appear at the required pretrial conference, Plaintiff represented only that such failure was "obviously inadvertent," without any explanation as to what specifically caused her not to appear. [ECF No. 293, p. 1]. While Plaintiff further suggested that she has been stressed and physically ill over the past several months [ECF No. 293, pp. 1-2], such a general statement, without more, is not a sufficient excuse for failing to appear. Indeed, Plaintiff has not suggested that her alleged condition has otherwise prevented her from participating in this case, and she has been well enough to prepare and file four detailed submissions since November 26, 2018. [ECF Nos. 273; 276; 282; 293].

Regarding the witness and exhibit lists, Plaintiff stated that "laws *correctly* applied require her to remind the Court, ***but for all of us still being forced to keep barking up the wrong tree since day one of litigation*, Matriotic Justice (A5-A6)** would have prevented ***Patriotic* Justicide** and the need to file witness/exhibit lists, etc. for an unlawful unnecessary trial and error ***in this open and shut case of killing since day one of litigation***." [ECF No. 293, p. 2 (emphasis in original and footnote omitted)]. Plaintiff did ***not*** announce an intent to use her earlier-filed exhibit and witness lists or attach new witness and exhibit lists, nor did Plaintiff separately file new witness and exhibit lists by this Court's deadline to do so.

As reflected above, in addition to failing to proceed with the previously-scheduled trial, Plaintiff has violated numerous court orders in the weeks leading up to the December 18, 2018 trial: (1) Plaintiff failed to participate in the drafting of the joint pretrial stipulation, in violation of the trial order entered on October 26, 2018; (2) Plaintiff failed to attend an in-person meeting to discuss the joint pretrial stipulation, in violation of the trial order; (3) Plaintiff failed to submit an affidavit or declaration explaining why she failed to cooperate in the preparation of the required joint pretrial stipulation, in violation of this Court's November 27, 2018 Order to Show Cause; (4) Plaintiff failed to participate in preparing, and jointly submitting, proposed jury instructions and verdict forms, in violation of the trial order; (5) Plaintiff failed to attend the telephonic pretrial conference, in violation of the trial order; (6) Plaintiff failed to provide an adequate explanation for why she failed to attend the pretrial conference, in violation of this Court's December 10, 2018 Order to Show Cause; and (7) Plaintiff failed to file her exhibit and witness lists by December 13, 2018, or to announce her intent to use her earlier-filed lists, in violation of this Court's December 6, 2018 Order.

The Court provided Ms. Martins with the opportunity to argue that RCCL's motion to dismiss should not result in a with-prejudice dismissal [ECF No. 296], and she submitted what she called her "*Mindful* Memorandum in Opposition to Defendant's *Mindless* Motion to Dismiss *with* Prejudice" [ECF No. 299]. In the memorandum, Ms. Martins noted that she filed it on December 19, 2018, long before the expiration of the

Court-imposed January 4, 2019 deadline. The memorandum argues that a dismissal of the lawsuit, with or without prejudice, "will make lies prevail over truth." [ECF No. 299, p. 6].

The memorandum does not substantively address the arguments RCCL advanced to support its request for a with-prejudice dismissal. It asked the Court to take judicial notice "of the foregoing facts of life, killing, due process of law defiled as due process of lie so far and pass its legally valid and enforceable Order *resurrecting* Matriotic Justice still being assassinated by still ongoing *Patriotic* Justicide as required by everyone's **unanimous belief** in the **everlasting legal lightbulb** so that a blind eye is **not turned to claim not seeing it all** in the **everlasting legal lightbulb** since day one." [ECF No. 299, p. 3 (emphasis in original)].

Ms. Martins signed the memorandum in front of a notary public, who signed and stamped the "notary acknowledgment." *Id.* Ms. Martins signed the memorandum as "*Matriarch Pro-Se* Attorney-in-Fact." *Id.* (emphasis in original).

The memorandum did not, as required by Court order, "explain why the dismissal should not be with prejudice." [*See* ECF No. 296].

Ms. Martins then filed an unauthorized "*Supplemental* Memorandum in Opposition to Defendant's *Mindless* Motion to Dismiss *with* Prejudice" [ECF No. 300 (emphasis in original)]. Setting aside the fact that the supplemental memorandum was

unauthorized, it did not, once again, and contrary to the Court's order, explain why the dismissal should not be with prejudice.

Plaintiff did not, in either memorandum, attempt to refute or justify any of her misconduct enumerated in RCCL's motion to dismiss, argue that RCCL was not prejudiced by such misconduct, or demonstrate that lesser sanctions than a dismissal with prejudice would suffice. Plaintiff also did not cite *any* legal authority in her memoranda, let alone any authority supporting her presumed position that this Court's dismissal should not be with prejudice. Instead, Plaintiff insulted RCCL and the judicial process and made several inflammatory comments.[2]

In its reply, RCCL summarized the points it made in its motion and asked for a with-prejudice dismissal "as a sanction based on Plaintiff's clear pattern of delay and deliberate refusal to comply with the directions of this Court." [ECF No. 301, p. 3].

### a.  RCCL's Motion for Attorney's Fees and Nontaxable Costs

The Court granted RCCL's Motion to Bifurcate and permitted it to file its motion for entitlement to attorney's fees and nontaxable costs. [ECF No. 309]. In the Court's

---

[2]  Plaintiff compared an alleged quarantine of Plaintiff's family to "Nazi Concentration Camps," referred to RCCL as a "killer" using litigation to make "Plaintiffs sitting duck targets for target shootings," and alleged that she has been "prostituted" as a result of RCCL and the "zealous lawyering" by its defense counsel. [ECF Nos. 299, p. 2; 300, pp. 2-5].

view, RCCL's suggested approach is logical and efficient and permits the Court to evaluate the issue of entitlement before considering the amount of an award.[3]

RCCL bases its motion on the Court's inherent authority and the Order Dismissing Case with Prejudice. [ECF No. 302]. Noting that the lawsuit has already been dismissed, RCCL contends that Ms. Martins "continues to waste the Court's time with frivolous, indecipherable filings." [ECF No. 313, pp. 9-10]. In its motion for fees and nontaxable costs, RCCL highlights the following recent procedural history:

> On March 1, 2019, Ms. Martins filed a "*Dispositive* Motion for an *Uncompromised* Decision, Order and Judgment ("DOJ")" [D.E. 306]. Ms. Martins argued in the motion that all orders entered by the Court since the September 15, 2016 pretrial conference in this case are nullities because of an alleged conspiracy between the Court, Ms. Martins' former lawyers, and RCCL's lawyers. [Id. at 1-2]. The Court denied the motion for the reasons stated in RCCL's response, including because Ms. Martins' motion was frivolous. [D.E. 308]. Ms. Martins has since filed two other memoranda which purport to "expose" an alleged "judicial conspiracy." [D.E. 310, 312].

[ECF No. 313, p. 10].

RCCL's motion seeks attorney's fees and nontaxable costs for both her conduct from November 18, 2018, to the present *and* for her failure to proceed with the November 6, 2017 trial. RCCL intends to submit a specific request for the amount of fees

---

[3]   The Undersigned has already entered a separate order on RCCL's separate request for taxable costs as the prevailing party. [ECF Nos. 314; 321]. That request does not involve the issue of entitlement, as it is based merely on RCCL's status as a prevailing party and its standard request for the costs permitted by federal statute.

and nontaxable costs, supported by billing records and other documents, if necessary, after entry of this order.

## II.     Applicable Legal Standards and Analysis

In both law and admiralty jurisdiction, each party bears its own attorneys' fees and costs absent a statutory or contractual entitlement to same. *Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 257 (1975); *Reliable Salvage & Towing, Inc. v. Bivona*, 476 F. App'x 852, 854-55 (11th Cir. 2012). However, the district court may award attorney's fees when a losing party has "acted in bad faith, vexatiously, wantonly or for oppressive reasons." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-46 (1991); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *Misener Marine Const., Inc. v. Norfolk Dredging Co.*, 594 F.3d 832, 838 (11th Cir. 2010). The district court's decision to impose sanctions under its inherent power is reviewed under an abuse of discretion standard. *Barnes*, 158 F.3d at 1214. A "primary" aspect of the court's discretion to exercise its inherent powers "is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." *Id.* at 1215 (quoting *Chambers*, 501 U.S. at 44-45).

"The key to unlocking a court's inherent power is a finding of bad faith." *Barnes*, 158 F.3d at 1214 (citing *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995)). Courts in the Eleventh Circuit have explained that:

> Bad faith exists when the court finds that a fraud has been practiced upon it, or "that the very temple of justice has been defiled," or where a party or attorney knowingly or recklessly raises a frivolous argument, delays or disrupts the litigation, or hampers the enforcement of a court order.

*Allapattah Servs., Inc. v. Exxon Corp.*, 372 F. Supp. 2d 1344, 1373 (S.D. Fla. 2005) (quoting *Chambers*, 501 U.S. at 46); *see also Barnes*, 158 F.3d at 1214; *Malautea v. Suzuki Motor Co. Ltd.*, 987 F.2d 1536, 1545–46 (11th Cir. 1993).

A *pro se* plaintiff[4] is responsible for following court orders and is subject to the same sanctions as any other litigant. *See Moon v. Newsome*, 863 F.2d 835, 837 (11th Cir. 1989). Indeed, our federal courts have "never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel." *McNeil v. United States*, 508 U.S. 106, 113 (1993).

Once a *pro se* litigant is in court, "he is subject to the relevant law and rules of court." *Moon*, 863 F.2d at 837 (explaining that "no one should be permitted to misuse courts with impunity"); *see also Albra v. Advan, Inc.*, 490 F.3d 826, 829 (11th Cir. 2007) (explaining that although courts adopt a liberal construction for *pro se* pleadings, mailing a summons without a complaint was insufficient because *pro se* litigants must conform to procedural rules).

Proceeding as a *pro se* litigant is difficult and can lead to negative results arising from a failure to know or appreciate the law. *Cummings v. Dep't of Corrs.*, 757 F.3d 1228, 1234 n.10, 1235 (11th Cir. 2014) (explaining that a *pro se* litigant with knowledge of the

---

[4]     As noted above, Ms. Martins and her family members specifically declined the opportunity to have a lawyer from the Volunteer Attorneys Program represent them after their first attorney was given leave to withdraw (because of conflicting positions between counsel and the Plaintiffs about the purported settlement agreement).

risks "acquires no greater rights than a litigant represented by counsel" and concluding that *pro se* plaintiff waived argument about a sleeping juror because of a failure to object); *Hill v. Wal-Mart Stores, Inc.*, 510 F. App'x 810, 812 (11th Cir. 2013) (holding that *pro se* plaintiff waived right to jury trial because he failed to ask for one and rejecting plaintiff's argument that he was not aware of the rule requiring the plaintiff to request trial); *Williams v. Slack*, 438 F. App'x 848, 850 (11th Cir. 2011) (noting that the local rule is an ordinary one that is not interpreted "so as to excuse mistakes by those who proceed without counsel" and deeming defendant's statements of material facts as admitted where the *pro se* plaintiff's response did not contain proper citations to evidence or individually numbered, concise, and non-argumentative responses).

Although *pro se* plaintiffs are generally treated somewhat more leniently than parties represented by counsel, "*pro se* filings do not serve as an 'impenetrable shield, for one acting *pro se* has no license to harass others, clog the judicial machinery with meritless litigation, and abuse already overloaded court dockets.'" *Patterson v. Aiken*, 841 F.2d 386, 387 (11th Cir. 1988) (quoting *Farguson v. MBank Houston, N.A.*, 808 F.2d 358, 359 (5th Cir. 1986)).

*Pro se* plaintiffs may be ordered to pay the defendant's attorneys' fees where the plaintiff acts in bad faith, "determined by objective standards of reasonableness." *Patterson*, 841 F.2d at 387 (providing the standard for imposing sanctions under Rule 11 and quoting *Nesmith v. Martin Marietta Aerospace*, 833 F.2d 1489, 1490 (11th Cir. 1987)).

*Pro se* litigants are subject to Rule 11 sanctions. *See Roggio v. United States*, No. 11-22847-CIV, 2013 WL 12176990, at *2 (S.D. Fla. Apr. 10, 2013); *Azubuko v. Story*, No. 3:04-CV-1252-J-32MCR, 2005 WL 1027245, at *2 (M.D. Fla. Apr. 6, 2005); *Thomas v. Taylor*, 138 F.R.D. 614, 618 (S.D. Ga. 1991).

In fact, this Court has ordered *pro se* parties to pay attorneys' fees and/or costs in other matters involving similar conduct. *See, e.g.*, *Inflot World Wide, Inc. v. Glukhov*, No. 13-20882-CIV, 2015 WL 12780948, at *1–2 (S.D. Fla. June 3, 2015), *report and recommendation adopted*, 2015 WL 12780949 (S.D. Fla. June 18, 2015); *Freeman v. Rice*, No. 09-20352-CIV, 2012 WL 12947682, at *4 (S.D. Fla. Feb. 7, 2012), *report and recommendation adopted*, 2012 WL 12948863 (S.D. Fla. Oct. 1, 2012), *aff'd*, 548 F. App'x 594 (11th Cir. 2013).

Similarly, appellate and trial-level courts in our Circuit have used the inherent power doctrine to enter significant sanctions awards or case-dispositive rulings against *pro se* plaintiffs. *See, e.g.*, *Dial HD, Inc. v. ClearOne Commc'ns, Inc.*, 536 F. App'x 927, 930-32 (11th Cir. 2013) (affirming sanction of almost $60,000 against a *pro se* plaintiff who filed an action to retaliate against a competitor); *Soto v. Miami-Dade Cty.*, 281 F. Supp. 3d 1320, 1323-24 (S.D. Fla. 2017) (noting that "nothing about plaintiff's medical conditions can be read to excuse the plaintiff's flagrant noncompliance with nearly every Court order that has been issued" and dismissing with prejudice a *pro se* plaintiff's case under the inherent power doctrine as a sanction for noncompliance with court orders).

Although the Court is sympathetic to Ms. Martins' situation, [*see* ECF No. 180, pp. 3-5], even a *pro se* party can (and should) be expected to understand the requirement to tell the truth and not to make statements she either (a) knows are false or (b) knows she lacks the facts to support them at the time she makes the statements. The Court has previously explained that "[i]f egregious enough, pursuing a claim 'without reasonable inquiry into the underlying facts' can constitute the bad faith necessary to support a fees sanction." *Rodriguez v. Marble Care Int'l, Inc.*, 863 F. Supp. 2d 1168, 1179 (S.D. Fla. 2012) (citing *Barnes*, 158 F.3d at 1214).

Ms. Martins' conduct has consistently evinced a lack of respect for the Court and a heedlessness of the consequences of her actions. Ms. Martins failed to proceed with the November 6, 2017 trial, notwithstanding the fact that she had attended the pretrial conference four days earlier and gave no indication that she was not ready for trial. After having her action reinstated, Ms. Martins failed to comply with ***any*** of the pretrial requirements or court orders leading up to the December 18, 2018 trial. After her action was dismissed, Ms. Martins cast baseless aspersions against the Court and RCCL. As this Court has previously observed, "if litigation is war, then it is a war fought under rules which prohibit and restrict certain tactics." *Rodriguez*, 863 F. Supp. 2d at 1172.

Ms. Martins' post-dismissal conduct demonstrates her continued defiance, as she has filed multiple baseless motions and/or memoranda and accused RCCL (and the

Court) of nefarious behavior, all the while prolonging this case (which is, by now, closed) and forcing RCCL to continue to incur substantial costs.

RCCL says that none of Ms. Martins' conduct since November 2018 could be deemed to be objectively reasonable; to the contrary, Ms. Martins has been hostile and uncooperative, and her submissions have been frivolous and inflammatory.[5]

RCCL contends that Plaintiff should not be permitted to flout all of this Court's pretrial requirements and then proceed to trial while putting RCCL at an extreme disadvantage due to Plaintiff's failure to provide required information. *See Peters-Turnball v. Bd. of Educ.*, No. 96 CIV. 4914 (SAS), 1999 WL 959375, at *3 (S.D.N.Y. Oct. 20, 1999) (stating "[a] court need not beg a party to comply with its orders"); *see also Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-CV-1762, 2011 WL 2490808, at *3 (S.D.N.Y. June 22, 2011) (same).

The Court finds that Plaintiff's non-compliance is willful, as she has been put on express notice multiple times that her case would be dismissed should she fail to comply with the Court's orders. *See Vilsant v. Saxon Mortg. Servs., Inc.*, No. 08-61148, 2009 WL 413724, at *3 (S.D. Fla. Feb. 18, 2009) (granting with-prejudice dismissal of

---

[5]     Plaintiff's pre-trial conduct suggests that she decided to adopt an across-the-board strategy of being difficult. Thus, to provide one illustration, she refused to agree to the authenticity of records, requiring RCCL to take depositions of myriad records custodians. [ECF No. 270, pp. 1-2]. Thus, it seems as though this attitude continued through events following the second scheduled trial (which never occurred because of Ms. Martins' repeated failures to comply with Court orders).

lawsuit after willful, repeated, and un-ending violations of discovery orders and discovery rules).

As already highlighted in this order, Plaintiff has failed to properly respond to any of the three show cause orders entered by this Court. As the Court noted in *Vilsant*, "Plaintiffs' lack of response to the Order to Show Cause is telling, as it shows that no civil remedy that this Court can now envision would achieve compliance at this point." *Vilsant*, 2009 WL 413724, at *5.

Given this history (which amply demonstrates that Ms. Martins was warned of the consequences of continued intransigence), an award of fees and nontaxable costs is undoubtedly warranted. *Cf. Zocaras v. Castro,* 465 F.3d 479, 484 (11th Cir. 2006) (explaining that a district court need not explicitly consider lesser sanctions and reject them in order to dismiss with prejudice).

The only remaining issue for the Court to determine is *when* to start the clock for purposes of calculating the fees and costs which Ms. Martins will be required to pay.

Although the Court did not ultimately enter a with-prejudice dismissal when Ms. Martins refused to go forward with the first scheduled trial, her incorrect and misleading explanations for why she said she could not proceed would constitute the bad faith necessary to invoke the inherent power doctrine. Nevertheless, the Undersigned has decided to adopt a more conservative approach and use a later date (which will minimize the fees and costs award).

24

Specifically, the Court will use **November 26, 2018**, the date when Ms. Martins refused to meet with RCCL's counsel to discuss the Court-ordered pretrial stipulation, as the trigger for calculating attorney's fees and costs. There are, to be sure, other, earlier dates which might also be used, but this date is tied to a specific event and a particular trial-related requirement.

If RCCL wants to pursue its motion for attorney's fees and nontaxable costs, then it shall file an appropriate motion, with sufficient billing records and costs-related documents, by June 21, 2019. Given Ms. Martin's lack of cooperation, the Undersigned will not require RCCL to first serve a courtesy copy of the motion on Ms. Martins in an effort to reach an agreement on the amount. Instead, Ms. Martins may object to the *amount* of the requested fees and costs by filing an objection within 14 days of RCCL's filing. RCCL may file an optional reply within seven days of any opposition to the amount[6] requested.

---

[6] Ms. Martins may not object to RCCL's entitlement to attorney's fees and nontaxable costs. Rather, her objections now are restricted to the amount. She may, of course, pursue an appeal at the appropriate time as to entitlement and/or amount of the fees and costs award (once it is entered) by following the applicable rules of civil procedure, appellate procedure, and the local rules.

### III.    Conclusion

For the reasons stated above, the Court **grants** RCCL's motion for attorney's fees and nontaxable costs.

**DONE AND ORDERED** in Chambers, in Miami, Florida, on June 7, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**<u>Copies Furnished to:</u>**
All Counsel of Record

Marla Martins, *Pro Se*
7687 Forestay Drive
Lake Worth, Florida 33467